Retta Shuff, Plaintiff-Appellee and Cross-Appellant, v. George Fulte, Defendant-Appellant and Cross-Appellee.

Gen. No. 9,772.

Opinion filed May 31, 1951. Rehearing denied September 4, 1951. Released for publication September 4, 1951.

KIDWELL & YELVINGTON, of Mattoon, for appellant; W. K. KIDWELL, of Mattoon, of counsel.

EUGENE BLAND, of Shelbyville, for appellee.

Mr. Presiding Justice O'Connor delivered the opinion of the court.

A bill of complaint was filed by the plaintiff-appellee and cross-appellant, hereinafter referred to as the plaintiff, in the circuit court of Shelby county, in 1930, charging the defendant-appellant and cross-appellee, hereinafter referred to as the defendant, with extreme and repeated cruelty. At that time there were two children as a result of the marriage, a daughter, Leatha Fulte, about three years of age, and a son, Raymond Fulte, seven months of age. A trial by jury resulted in a verdict finding the defendant guilty of extreme and repeated cruelty, as charged in the complaint. The decree entered at that time granted the plaintiff the care, custody, control and education of the two minor children, reserving rights of visitation to the defendant. The defendant was ordered to pay to the clerk of the court for the use of the plaintiff to enable her to support the two children, the sum of $4 each and every week during each and every year until the further order of the court.

On March 6, 1933, the decree was modified, reducing the payments to $3 per week, and further ordering that the payments proceed in this matter until the further decree and order of the court.

In order to enforce the decree as entered, the plaintiff on ten different occasions, beginning on May 2, 1931, filed petitions for rules to show cause, and on four of said occasions the defendant was found guilty of contempt of court for noncompliance with the decree. The last petition for rule to show cause was filed on June 2, 1950, which charged the defendant with having paid only the sum of $312.50 since the 24th day of May, 1941, there being due at that time the sum of $783; and that, together with the accumulated installments to the date of filing the petition, there was due the sum of

$1,883.50. Defendant filed his answer to the petition, admitting that the $783 was due as charged in the complaint, that only the sum of $312.50 had been paid since the 24th day of May, 1941, and further admitted that no payments had been made since January 18, 1946. Defendant in his answer also set up as a defense, the fact that the daughter, Leatha Fulte, became employed in May, 1943, and was thereafter self-supporting; that the son, Raymond Fulte, became employed in October, 1946, and was thereafter self-supporting; that on and after said dates of employment of the said children he, the defendant, was no longer obligated by said decree to make any additional weekly payments. Defendant in his answer, also asked for an accounting to determine as to the amount, if any, he was in default.

The plaintiff filed an amendment to her complaint, which alleged that she was not employed and had no income; that she had no means or money with which to pay her attorney; that she had a half interest in a small house in Shelbyville where she resided with her present husband, who purchased the property. She further alleged that the defendant owned extensive interests in farm land in Shelby county, being upwards of 200 acres; that he was engaged in farming and owns livestock, farming implements, growing crops, and so forth; that the defendant was worth upwards of $40,000, and asked an order of court to require the defendant to pay the sum of $150 as and for her attorneys' fees for services rendered.

The defendant filed no answer nor denial to the amendment to the complaint.

After a hearing before the court, the court found the defendant guilty of contempt, and committed him to the county jail of Shelby county for 120 days, or until he purged himself of said contempt by paying to the clerk of the court for the use of the plaintiff, the sum of $1,632.76 and costs of the proceedings; and

found that under the order of March 24, 1941, the sum of $783.26 was due to the plaintiff, plus the sum of $3 per week for 390 weeks from March 24, 1941 to September 24, 1948, less the sum of $320.50, which had been paid since March, 1941, leaving a balance due of $1,632.76. The court made no allowance for interest on the sum due since March, 1941, and made no allowance for attorneys' fees for the plaintiff.

The plaintiff moved the court for an order granting her leave to amend her petition by inserting therein that the correct amount due the petitioner on June 8, 1950, was the total sum of $2,228.72. The motion was denied.

The defendant brings this appeal from the above mentioned order, and the plaintiff gave notice of a cross-appeal therefrom.

The defendant by his appeal claims that he was not in contempt of court, that he owed the plaintiff no money under the modified decree due to the emancipation of the two children from parental control because they became employed and collected their own earnings.

It is true, as the defendant points out in his brief and argument, that the power of the court to enforce the payment of alimony and money due under support decrees, by imprisonment of the defendant for contempt of court is limited to a wilful and contumacious refusal to obey the order of the court. *Mesirow v. Mesirow*, 346 Ill. 219. The facts in the instant case certainly display a wilful and contumacious refusal to obey the order of the court, and the case comes within the rule and definitions of the words "wilful" and "contumacious."

Under the facts and circumstances as shown by the evidence, the trial court could come to only one conclusion, and that was that the defendant was in arrears in his payments; that he was financially able to meet the obligation and that he had wilfully defied

161

the order of court without any legal excuse, and was in contempt of court.

The defendant admitted that he had paid only the sum of $312.50 since May 24, 1941. He seeks to excuse himself from further payments on the ground that his children had emancipated themselves from parental support by becoming employed. Defendant contends that Leatha became employed in the month of May, 1943, was self-supporting from that date until the date of her death on January 23, 1947, and that Raymond became self-supporting by securing employment on June 8, 1944, and was self-supporting from that date to the time of the filing of the petition in this case.

The evidence showed that Leatha was employed in the home of one Ella Steward at Shelbyville, Illinois, from August 1, 1942 to January 1, 1944, and received and was paid the sum of $5 per week, amounting to $380, and in addition was given her board and room and part of her clothing. She received nothing from Ella Steward from January 1, 1944 to June 20, 1944, but did live at the Steward home during that period and was given board and room in return for her assistance with the housework; that Ella Steward paid the sum of $142 for the hospital bill covering an operation on Leatha Fulte. The evidence further showed that Leatha Fulte worked at the Ginnie Lou Sta-Rite, Inc., factory in Shelbyville, Illinois, from June 20, 1944 to July 17, 1944, and earned $43.20; that she was employed at the Brown Shoe Factory at Mattoon, Illinois, from July 25, 1944 to June 29, 1945, and earned $836.84, making a total earning of $1,260.04 from August 1, 1942 to June 29, 1945. That Leatha Fulte was born March 4, 1927, was three years old at the time the complaint for divorce was filed, reached her majority on March 4, 1945, and died January 23, 1947.

The evidence also showed that Raymond Fulte was born on January 24, 1930, was 7 months old at the time

the complaint for divorce was filed; that he was employed by E. J. Watton at Shelbyville, Illinois, from June 8, 1944 to September 26, 1945, and earned and was paid $768.92; that he was employed at the Ginnie Lou Sta-Rite, Inc., factory in Shelbyville from October 7, 1946 to September 13, 1948, and earned $2,690.95; that he was also employed at the Caterpillar Tractor Company at Peoria, Illinois, from September 5, 1948 to August 14, 1950, and was paid the sum of $4,409.74 for that period of time, making a total earnings from June 8, 1944 to August 14, 1950, of $7,868.61.

In addition to the above stated facts, it was shown by the testimony of plaintiff Retta Shuff, that while Leatha was working for Mrs. Steward the plaintiff contributed to her support the sum of $5 per week; that after her sickness and hospitalization she returned home and later, while Leatha was employed at the Sta-Rite Factory she stayed at home, during which time the plaintiff paid her something and contributed to her support. That while Leatha was employed by the Brown Shoe Company in Mattoon she came home once a week, during which time the plaintiff helped her out, and that plaintiff paid to Leatha the sum of $5 per week from July, 1944 to June, 1945.

The testimony of the plaintiff also showed that her son Raymond worked for Watton Dry Cleaners while attending school, he also went to work for the Sta-Rite Factory in October, 1946, and worked at the Cheese Factory in Shelbyville during school vacation, at 65 or 75 cents per hour, and that his earnings from Caterpillar in Peoria, from September 5, 1948 to July 30, 1950, amounted to $4,409.74. The plaintiff allowed her son Raymond to collect his earnings, and did not claim any part of it as support and maintenance of her son.

The sum of $4 per week allowed by the original decree and the sum of $3 per week allowed by the modified decree were meager, to say the least, and no one

163

can contend that even if these amounts had been paid regularly, as provided, that they would have been sufficient to maintain the children. The record discloses that from the 23rd day of February, 1931, the date the decree for divorce was entered, at which time Leatha was 3 years of age and Raymond was 7 months of age, up to the date of the filing of the petition herein, the defendant had paid to the plaintiff for the support and maintenance of the two children, the sum of only $1,214.24, or $607.12 for each child, amounting to less than $35 per year for the maintenance and support of each child.

How can defendant now contend that the children emancipated themselves from support due them by their father under the decree of the court? It is clear that these children sought employment for their self-preservation, as the plaintiff was unable to maintain them entirely by her earnings from doing washings and ironings and general housework for hire. It is no discredit to her that she allowed her children to partially earn their living, and it is most assuredly to the credit of the children that they were willing and able to assist in paying for their necessities of life.

The above facts do not amount to self-emancipation under the generally accepted definition. When a child who is physically and mentally able to take care of himself, voluntarily abandons the parental roof and leaves its protection and influence, and goes out into the world to fight the battle of life on his own account, the parent is no longer under legal obligation to support him. *Iroquois Iron Co. v. Industrial Commission*, 294 Ill. 106.

In the present case neither of the children voluntarily abandoned the parental home, neither of them chose to fight the battle of life of his own accord, but they were obliged to do so to help their mother, while their father, although ordered to do so, failed,

164

neglected or refused to contribute a very small amount to help maintain them. These actions on the part of the children did not amount to self-emancipation to relieve the father of the obligation of complying with the decree of court ordering him to pay a small amount toward their maintenance and support.

Under the circumstances the trial court could not do otherwise than to find that at least the sum of $1,632.76 was due from the defendant up to September 24, 1948.

The trial court properly held there was due in addition to the sum of $783.26, the further sum of $3 per week for 390 weeks, from March 24, 1941 to September 24, 1948. The court allowed a credit on said sum due of $320.50, paid by the defendant during that time in payments of $1 to $1.50 per week up to January 18, 1946.

██ The trial court, however, should have computed the amount due at $3 per week up to June 5, 1950, when the petition was filed, making an allowance of 88 weekly payments, or an additional amount of $264. Past-due installments of alimony and support money are a vested right, and the court has no authority to modify them in any particular, either as to amount or time of payment. The decree entered in this case provides payment of $3 per week "until the further decree and order of this court." Thus, all accrued and past-due payments under the decree is a vested right, and cannot be changed by a subsequent order of the court. *Gordon v. Baker,* 182 Ill. App. 587.

██ The plaintiff next contends that she should have been allowed the sum of $150 attorneys' fees, as demanded in her amendment to the complaint. It appears that for the tenth time it was necessary for the plaintiff to employ an attorney and come into court to enforce her rights under the decree. At no previous time was an order for attorneys' fees entered. The rule is that a divorce court has authority to allow fees and

expenses in cases where it is necessary to defend a decree and enforce payment thereof. *Riddlesbarger v. Riddlesbarger,* 341 Ill. App. 107, 93 N. E. (2d) 380, and cases cited therein. Under that well established rule we are of the opinion that this certainly is a proper case to allow the plaintiff the modest sum of $150 as and for her attorneys' fees in this case.

 Plaintiff finally contends that the trial court erred in not allowing her to further amend her complaint to demand and include interest on the sum of $783.26 from March 24, 1941. With this contention we are entirely in accord. A decree of divorce that provides for weekly payments for support and maintenance for the children is a money decree and draws interest at the rate of 5% per annum until satisfied. *Wadler v. Wadler,* 325 Ill. App. 83, 59 N. E. (2d) 505; *Barnett v. Barnett,* 336 Ill. App. 601, 84 N. E. (2d) 648. Interest on $783.26 at 5% per annum from March, 1941 to September, 1948, a period of seven and one-half years, should have been allowed, and the trial court should have allowed the complaint to be amended and allowed the interest as prayed for.

The decree of the circuit court of Shelby county is affirmed as to the finding of the defendant in contempt of court, and the further finding that the sum of $1,632.76 was due the plaintiff as of September, 1948; and the case is remanded to the Circuit Court of Shelby county with instructions to allow the further sum of $264 on past-due payments, also the sum of $150 as and for plaintiff's attorneys' fees, and interest at 5% per annum on the sum of $783.26 from March, 1941 to June 5, 1950.

*Affirmed in part and reversed in part, and remanded with directions.*