*In re* MARRIAGE OF JOANNE D. SMITH, Petitioner-Appellant, and ANDREW P. SMITH, Respondent-Appellee.

Second District   No. 81-26

Opinion filed October 15, 1981.

Harry Schaffner, of Schaffner and Castillo, of Elgin, for appellant.

William Murphy, of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Joanne D. Smith (the wife) appeals from a portion of the judgment of dissolution of marriage which disposed of marital property, and from the award of child support, maintenance and attorney's fees. Andrew P. Smith (the husband) cross-appeals from the portion of the judgment which awarded certain marital property to the wife or directly to the children, and the child support award.

The judgment appealed from was entered on December 12, 1980.

Based on our view of the record, we have stated the property division decreed by the court in the following outline:

*HUSBAND*

| | |
|---|---|
| Keogh Plan | $ 56,145.57 |
| Life Insurance (Cash surrender value) | 25,000.00 |
| Savings Account | 8,169.00 |
| Note (payable by Timothy Smith, son of parties) | 4,461.63 |
| 1/2 marital residence | 50,000.00 (approx.) |
| 1973 Maverick | No evidence of value |
| Certain household items | No evidence of value |
| Total | $143,776.20 |

*WIFE*

*Marital*

| | |
|---|---|
| Merrill Lynch Account | $ 73,171.00 |
| Commonwealth Edison Stock | 20,250.00 |
| 1/2 marital residence | 50,000.00 (approx.) |
| 1975 Ford station wagon | No evidence of value |
| Remainder of household goods | No evidence of value |
| | $143,421.00 |

*Non-marital*

| | |
|---|---|
| Silver place settings | No evidence of value |
| Wife's expected inheritance | Estimated at $100,000 |

*CHILDREN*

| | |
|---|---|
| All camping equipment | No evidence of value |
| Piano | No evidence of value |
| 1974 Monza (for use of Kathy, then David)—title in wife's name as trustee | No evidence of value |

The husband is a licensed professional engineer in his own business with two small municipalities as his principal clients. The parties were married on September 11, 1954, eight children being born of the marriage, seven of whom are surviving; five children live in the marital residence, three of whom are minors; he is age 53 and she, 48; before and for a short time after their marriage she was a private secretary. The parties' tax returns for 1974-1979 were admitted into evidence. The 1978 return reflected net income of approximately $38,000 and that of 1979 approximately $34,000.

Business income was augmented by stock dividends, interest income and a capital gain from sale of stock. Because the wife was awarded all the stock, most of this income will no longer accrue to the husband. The husband paid almost $2,000 social security in 1979. Thus, if the husband earns similar amounts in 1980, he would have about $32,000 disposable income before payment of Federal and State income taxes. He testified that he would earn substantially less in 1980 than in 1979, however.

The husband was ordered to maintain his life insurance policies for the benefit of the minor children until the youngest child graduates from college, with yearly premiums amounting to $3,500. The husband was also ordered to pay parochial school tuition for the youngest child while she is in grade school. Tuition was estimated at $400 a year. He was also required to maintain health insurance for the minor children and pay extraordinary medical and dental costs. The husband was further ordered to pay $1,200 per month ($14,400 annually) to the wife, to be reduced in the future by various means. The result is that the husband's monthly payments would drop to $700 a month in May of 1981 and, further, would drop to $400 per month in August of 1982. The court denied maintenance, noting that the monthly award to the wife was to give her time to readjust, to secure additional vocational training and "to provide some funds for such purpose and for support for the children."

The wife was awarded $93,000 in income-producing assets. Her present income is about $1,500 a year. Her annual income at the time of the decree was $14,400 from the husband, plus $1,500, or a total of $15,900. Additional amounts would be realized from the investment of the $93,000 at a reasonable rate of return. She testified to monthly expenses approximately totaling $1,800 with additional expenses associated with the house totaling $520.

The trial judge in a thorough memorandum stated his basic concept that each was an equal partner and that equality was the basic consideration in the division of the marital property. He also took into account the stipulation of the parties that the wife would shortly receive assets of a value of $100,000 from an inheritance from her family.

In her argument that the court based its decision on improper considerations, the wife first argues that the judge improperly relied upon the return on investment which she could realize from the stock and sale of the house with no evidence having been adduced as to the investment value or fair market rental value of the home. It appears from the judge's memorandum that in denying the wife's request to reside in the marital residence until the youngest child reached 18 he concluded that when factors such as taxes, insurance, as well as income lost from the retention of the residence "the cost of such a procedure will approximate at least $1,000 monthly on a house of such value."

■■ Section 503 of the Marriage and Dissolution of Marriage Act permits the court to consider "relevant economic circumstances" in disposing of the property and determining whether there is sufficient property to provide for a spouse's reasonable needs without awarding maintenance. (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(4).) We believe that it is thus contemplated that the court must make some approximation of the income available to a party in order to determine whether the marital home should be sold or maintenance should be awarded. We reject the wife's argument that inferentially suggests that expert witnesses must be called to testify regarding return on investment. In this regard the judge as the finder of fact is able to and in fact required to take notice of "relevant economic circumstances." It fairly appears from the record that the court was using an estimate of approximately 8 percent which, as a matter of common knowledge, is conservative and not an abuse of discretion. In 1919 the Illinois Supreme Court found that "[i]t is a matter of common knowledge, of which this court may take cognizance, that well secured six per cent first mortgage loans on Illinois farm land are not usually sold at a large discount." (*Kirby v. Judy* (1918), 286 Ill. 200, 208.) Generally, a court may take judicial notice of the fair earning powers of money or invested capital in a certain time period. See 29 Am. Jur. 2d *Evidence* §82 (1967). See also *In re Kees' Estate* (1948), 293 Iowa 287, 293, 31 N.W.2d 380, 383; *Fortman v. Manthey* (N.D. 1976), 248 N.W.2d 821, 823; *Trailer Train Co. v. State Board of Equalization* (N.D. Cal. 1981), 511 F. Supp. 553, 558. And *cf. Island Lake Water Co. v. Illinois Commerce Com.* (1978), 65 Ill. App. 3d 853, 857.

■■ The wife also contends that it was error for the trial court, in considering relative economic circumstances, to take into account income which would probably be received from inheritance to the wife. It was undetermined as to when the assets would come to the wife because of probate procedures and whether or not they were income producing. However, the wife stipulated that the estate had assets of about $800,000 and that under the will she would receive one-sixth of the estate after the expenses and taxes were paid, or approximately $100,000. The Act requires the court to consider nonmarital property, even where the nonmarital property will be received in the future when it determines the "relevant economic circumstances of each spouse" (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(4)) and the "amount and sources of income" of the parties (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(7)), as well as "the reasonable opportunity of each spouse for future acquisition of capital assets and income." (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(10).) It is a fair inference from the record that the court implicitly recognized that the inheritance might not be received for some time by awarding the wife an additional

$300 a month until August 1, 1982. We find no error in the court's consideration of the future inheritance in the circumstances of this case.

The wife also argues that she should have been allowed to stay in the home until the youngest child reaches 18. She reasons that the sale of the home would cause a reduction in the children's standard of living and that the husband did not need to withdraw his equity in the home. The goal of the trial court was to give the wife enough income-producing assets that maintenance would not be required. This goal is, of course, in line with the intent of the Act:

> "The dual intention of this section [504] and section [503] is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance." 9A Uniform Laws Annotated, Uniform Marriage and Divorce Act §308, Commissioners' Comment, at 161 (1979).

A secondary goal was to allow the husband sufficient funds or assets so that he could pay reasonable child support while providing for his own needs. Keeping the marital home would conflict with both of these goals. The wife would have $50,000 less in investment assets and would incur high monthly ownership costs. Either maintenance or quite high child support would have been necessary. The husband would have virtually no income-producing assets to aid him in paying child support. A fair analysis of the husband's income shows that he would be hard pressed to pay high child support on his business income alone.

■■ In our view, the court's decision here was reasonable. Although the Act recognizes the "desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children" (Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(4)), the Act prefers providing for the needs of the parties through property division rather than maintenance.

■■ The wife also contends that the denial of permanent maintenance was against the manifest weight of the evidence. The Act intends that post-marital support should be accomplished through a just division of assets wherever possible, rather than maintenance, which may be difficult to enforce. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 576.) A reasonable return on investment coupled with the wife's potential ability to have some employment earnings and receive child support appears to adequately provide for the needs of the wife and minor children. We find no abuse of discretion in this regard.

■■ We also find no abuse of discretion in the court's failing to order the husband to pay the wife's attorney's fees. On this record the wife could pay her attorney's fees of $5,000 while minimally reducing her assets, while the husband would have to nearly deplete the savings account

1132

awarded to him. The test for deciding whether to award attorney's fees is the ability of one spouse to pay and the ability of the other to pay. (*In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, *aff'd* (1981), 85 Ill. 2d 217.) Several courts have also held that even where a spouse is awarded sufficient marital property to enable her to pay her attorney's fees, the other spouse can be ordered to pay them so that she is not required to deplete her capital assets. (*Kenly v. Kenly* (1977), 47 Ill. App. 3d 694, 697; *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 661-62.) Within these guide lines we find no abuse of discretion.

■■ The wife also contends that the child support order is against the manifest weight of the evidence. She argues that the child support award is inadequate because after 1984 only one child will remain a minor and the child support will be a mere $200 a month. However, it seems fundamental that the court is concerned with the adequacy of the award when made, and the wife can always petition for an increase in the future. She does not argue that the $1,200 a month award is inadequate or even that the award will be inadequate when the house is sold. The court could reasonably have found that the wife's income from all sources will approximate the husband's, and under these circumstances the support award appears reasonable and is not an abuse of discretion.

■■ The wife also challenges the reduction in child support occasioned by graduation from high school. The judgment provided that child support would be reduced by $200 a month as each child obtained the age of 18 or finished high school, "whichever first occurs." The question of whether the court can order termination of support for a child before the legal duty of support ends does not appear to have been addressed in Illinois previously. We have not been directed to nor have we found relevant cases in other jurisdictions.

Section 510(c) of the Act provides as pertinent:

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child * * *." (Ill. Rev. Stat. 1979, ch. 40, par. 510(c).)

In *Finley v. Finley* (1980), 81 Ill. 2d 317, the Illinois Supreme Court noted that section 510(c) of the Act was nearly identical to provisions in the Uniform Act, which has been interpreted by the Commissioner's Note as having a purpose not to release the parent from the duty to support an emancipated child but rather to allow parents to agree and the decree to provide that parents be liable subsequent to the emancipation of the child. (81 Ill. 2d 317, 325.) Although the intent of section 510(c) is clearly to allow the court to order support to continue after emancipation, by its terms it could allow support to be cut off prior to emancipation. However, given the parents' legal duty to support their children, it would

appear to be sound public policy to require extraordinary circumstances before allowing support to terminate before emancipation. In effect, the trial court determined that children are emancipated upon graduation from high school without reference to the child's then need of support. We do not foreclose the possibility that there may be circumstances where an early end of support would be within court's discretion where the child had other monies available or at his disposal at such time. However, no such circumstances are present here. We therefore vacate that portion of the decree which terminated child support on graduation from high school. Of course, if a child becomes self-supporting before age 18 the husband can later petition for modification of the child support payments.

### The Cross-Appeal

At the conclusion of evidentiary hearings on August 13, 1980, the wife's attorney suggested that each party draw up a list of household items desired so as to facilitate an agreement. The husband agreed to the division of the vehicles suggested by the wife which eventually was incorporated into the judgment. The husband requested the camping equipment and the piano, which were given to respective children. The wife requested the silver as nonmarital property; and although the husband argued that the silver was marital property, he consented to it being awarded to the wife.

The thrust of the husband's argument on cross-appeal is that he assented to an unequal share of the household goods and vehicles in return for a greater share of other marital assets, specifically the Commonwealth Edison stock and the Merrill Lynch account. There is, however, no evidence as to the value of the items in question awarded to the wife as compared to those awarded to the husband. We conclude that the absence of evidence as to which household items were awarded to the wife precludes our review of the division of these goods, particularly since the husband does not point to any relevant fact under section 503 of the Act which was ignored by the trial court.

■■ We are, however, persuaded by the husband's contention that it is improper to award the camping equipment and piano to the children, because the Act contemplates the division of marital property between the spouses. The issue of whether marital property may be awarded to the children is addressed in *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 632. As noted in *Raski*, the Act contemplates that the duty of support normally continues only during the minority of the child and there is no provision in the Act authorizing an outright conveyance of marital property even in trust which is unrelated to a child's support of maintenance. (64 Ill. App. 3d 629, 632-33.) Awarding marital property to a

child forces the spouses to support the children after they have reached the age of majority, in contravention of the public policy of the State. We believe a fair resolution of this issue without requiring the time and expense of further hearings is for this court to vacate this portion of the judgment and to award the items to the husband, with the children given the right to use the items until the youngest child attains 18 years of age, at which time, if the husband directs, the items shall be returned to him.

■■ The husband also contends that the court's conclusion that the silver was nonmarital property of the wife is against the manifest weight of the evidence. We agree. The husband testified that the silver was a gift to the family and the wife did not rebut that contention nor did she claim at trial that the property was nonmarital. Property acquired during the marriage is presumed to be marital property. (Ill. Rev. Stat. 1979, ch. 40, par. 503(b).) The presumption may be overcome on a showing by clear and convincing evidence that the property was acquired by gift. (Ill. Rev. Stat. 1979, ch. 40, par. 503(a)(1). See also *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 654.) The burden of proof is upon the party claiming the nonmarital property. (*In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 398.) We conclude that the wife did not meet her burden. We therefore find that the property is marital property. Because there is no evidence of the value of the silver, we deem the fairest approach is to simply divide it between the parties.

■■ Finally, the husband in his cross-appeal contends that the child-support award should be reduced. We disagree. The basic child-support award does not seem excessive under all the circumstances. The temporary amounts are justified as giving the wife time to make other living arrangements and to secure more lucrative employment, and are therefore within the trial court's discretion.

To the extent heretofore indicated the judgment is affirmed in part, vacated in part, modified in part and as modified affirmed.

Affirmed as modified.

REINHARD and HOPF, JJ., concur.