*In re* MARRIAGE OF MARIE DONAHOE, a/k/a MARIE KEANE, Petitioner-Appellant, and RICHARD H. DONAHOE, Respondent-Appellee.

Second District   No. 82—322

Opinion filed May 3, 1983.

Louis F. Aiello and Janice Metro Johnston, both of Woodstock, for appellant.

David H. Pauker and Ira E. Rubin, both of Juron, Pauker & Rubin, of Chicago, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Marie Donahoe, now known as Marie Keane (Marie), appeals from that portion of an order terminating the child-support obligation of her former husband, Richard H. Donahoe (Richard), for the support of Margaret Donahoe (Margaret), one of the parties' children, and from a subsequent order denying her petition for attorney fees incurred in the child-support matters.

On appeal, Marie raises three issues: (1) whether the trial court erred in terminating child-support payments for Margaret Donahoe on the basis that she was emancipated; (2) whether the date on which Margaret was found by the trial court to be emancipated was incorrect; and (3) whether the trial court erred in denying her petition for attorney fees.

The marriage of the parties was dissolved by a judgment entered

on October 7, 1977. A marital settlement agreement, incorporated by reference into the judgment of dissolution, provided that Marie would have custody of the parties' minor children and that Richard would pay child support of $125 per week per child "until each child shall have reached the age of eighteen years, die [*sic*] or become emancipated, whichever first shall occur." On October 16, 1981, Richard filed a petition to terminate support, alleging that Margaret Donahoe, the parties' only remaining minor child, refused to attend high school and was not working, and requested that she be declared emancipated according to the terms of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*) and that his child-support obligation be terminated or, alternatively, that his obligation of child support be abated until she returned to school on a full-time basis. Marie moved to dismiss the petition and filed a petition for a rule to show cause alleging $1,125 in child-support arrearages and requesting attorney fees.

At the hearing on these matters on January 21, 1982, Richard testified that, under the original judgment of dissolution of marriage, Margaret was supposed to attend Marian Central Catholic High School, but that he had received reports from the school that she was not attending school. At the end of the 1980-81 school year, he had a conversation with Margaret and Marie. At that time he agreed to let Margaret transfer to Woodstock High School because he thought she would complete her high school education there. Margaret only attended two days of school at Woodstock. At that time he filed his petition, Margaret was not going to school and was not working.

Richard further testified that he felt an obligation to support Margaret if she were a full-time student. He had stopped making support payments to "force her to go back to school or have her emancipated." He said that he thought she was emancipated because she was now working and not going to school. He admitted that there was nothing in the original judgment which required her to go to school in order to be entitled to support. He also said that he did not know how much she made at her job. He believed that Margaret was still living with her mother.

He testified that he was a self-employed commodities broker; that at the time of trial he was in the middle of an anticipated two-month layoff because of an operation; that his only current income was $475 per month from a partnership; that when working his income varied depending upon the condition of the economy; and that he had recently reduced an outstanding $25,000 debt to $5,500. It was stipulated that Richard was in arrears in child-support payments since Sep-

tember 1981.

Margaret testified that she was 17 years old and would be 18 on October 1, 1982. She stated that she missed 59½ days of school at Marian Central Catholic High School during the 1981-82 academic year; that "quite a bit" of it was because of injuries she received in two automobile accidents; that she attended Woodstock High School for one or two days during the 1980-81 school year, but quit when she contracted mononucleosis; that she was ill during September and October of 1981; and that near the beginning of November her doctor said that she could return to school, but that she decided she missed too much school to complete the semester. She said that she had initially planned to return to school in the second semester, but then decided to pursue a General Educational Development certificate (commonly known as a GED or high school equivalency certificate) when she became 18. She said she did not intend to return to high school and this decision was made by her on her own.

She testified that three to four weeks before the hearing she had begun working at a Jewel Food store; that she worked 15-20 hours a week and was paid $4.12 an hour; that her largest weekly paycheck was $41; and that she gave her mother $10 to $15 a week for food. She stated that she had applied for one other job, but was turned down for health reasons. She said that she planned to continue working at Jewel and living with her mother. She said she would be unable to support herself on the money she earned.

On January 27, 1982, the trial court, in a memorandum opinion, found that Margaret was dependent on both her parents; that she had voluntarily dropped out of high school and taken a part-time job; that she used her earnings for her own needs and contributed some of them to her mother; that Margaret's actions were not caused by a failure of her father to make support payments; that through her voluntary action Margaret caused the termination of her education; and that Margaret's actions had "accomplished a course of conduct designed to attain economic self-sufficiency" and had worked a severance of the filial relation. The court, therefore, found that Margaret was emancipated and that her father no longer had to pay support after November 4, 1981, the date on which her doctor said she could return to school. The court found that although it did not condone Richard's unilateral cessation of support payments after August 1981, it could not find that his failure to pay was "wilful and wanton" under the circumstances of the ongoing dispute concerning Margaret's education.

On March 30, 1982, the trial court entered a written order dis-

missing Marie's petition for a rule to show cause, terminating Richard's child-support obligation as of November 4, 1981, and awarding Marie $1,153.94 for child-support arrearages from September 1, 1981, through November 4, 1981.

Also, on March 30, 1982, Marie filed a petition for attorney fees of $747.50 which she alleged she had incurred prosecuting her petition for a rule to show cause and defending against Richard's petition to terminate child support. Her attached affidavit showed that she received $604 a month in income, expended $1,029 a month for expenses, and had $80,000 equity in her home. No further testimony was offered in addition to Richard's testimony of his financial condition at the prior hearing.

On April 12, 1982, the trial court denied Marie's request for attorney fees, finding that there was no specific evidence that she was unable to pay her attorney fees or that Richard was in a better financial situation to pay them.

Section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(c)) provides, *inter alia*, that "[u]nless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child ***." The legislative purpose behind section 510(c) is to permit the parties to agree to remain liable for the support of the child *beyond* emancipation. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 326, 410 N.E.2d 12.) We also note that the court may award support for a child who has attained majority and is not otherwise emancipated when such child is mentally or physically disabled, and may make provision for the education and maintenance of a child whether of minor or majority age. (Ill. Rev. Stat. 1981, ch. 40, par. 513; see also *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 282, 411 N.E.2d 950.) However, although the intent of section 510(c) is clearly to allow the parties to agree that support continue after emancipation, section 510(c) by its terms could allow support to be cut off by the trial court prior to the child's emancipation by attaining age 18. *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 1132-33, 427 N.E.2d 1262.

In Illinois, a child who attains the age of 18 years is of legal age. (Ill. Rev. Stat. 1981, ch. 110½, par. 11—1.) Although not relevant to our inquiry here, the Emancipation of Mature Minors Act (Ill. Rev. Stat. 1981, ch. 40, par. 2201 *et seq.*) provides a means for a minor to obtain the legal status of an emancipated person.

In *In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262, the question of whether the court under section 510(c)

of the Illinois Marriage and Dissolution of Marriage Act can order termination of support for a child before the legal duty of support ends, was addressed for the first time in Illinois. We determined that section 510(c) by its terms allowed the court to cut off support prior to the child's emancipation by reaching the age of majority, but we held that given the parents' legal duty to support their children, sound public policy would require extraordinary circumstances before allowing support to terminate before emancipation by reaching the age of majority. (100 Ill. App. 3d 1126, 1132-33, 427 N.E.2d 1262.) We rejected the lower court's determination that minor children are emancipated upon graduation from high school without reference to the child's then need of support. We also stated that "there may be circumstances where an early end of support would be within the court's discretion where the child had other monies available or at his disposal at such time." 100 Ill. App. 3d 1126, 1133, 427 N.E.2d 1262.

Illinois decisions in child-support cases prior to adoption of the Illinois Marriage and Dissolution of Marriage Act have looked to the factors of self-emancipation and ability to be self-supporting in determining whether a child is emancipated before the age of majority. (See, *e.g., Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 968, 301 N.E.2d 167; *Shuff v. Fulte* (1951), 344 Ill. App. 157, 164-65, 100 N.E.2d 502.) In *Shuff v. Fulte* (1951), 344 Ill. App. 157, 100 N.E.2d 502, a case where the father sought to avoid child-support payments due to the purported emancipation of his two minor children because they became employed and collected their own earnings, the court adopted the test of self-emancipation from *Iroquois Iron Co. v. Industrial Com.* (1920), 294 Ill. 106, 109, 128 N.E. 289, as follows:

"When a child who is physically and mentally able to take care of himself, voluntarily abandons the parental roof and leaves its protection and influence, and goes out into the world to fight the battle of life on his own account, the parent is no longer under legal obligation to support him. *Iroquois Iron Co. v. Industrial Commission,* 294 Ill. 106." (344 Ill. App. 157, 164, 100 N.E.2d 502.)

In addition, generally, a child becomes emancipated when attaining the age of majority (*Finley v. Finley* (1980), 81 Ill. 2d 317, 326, 410 N.E.2d 12), when he marries (*People ex rel. Mitts v. Ham* (1917), 206 Ill. App. 543, 550), or when he enters the armed forces. (*Iroquois Iron Co. v. Industrial Com.* (1920), 294 Ill. 106, 109, 128 N.E. 289.) In other jurisdictions, while the termination of such support obligations prior to the child attaining the age of majority will be determined by the particular facts of each case, the most important consid-

erations are whether the child's own acts have brought about an emancipation and whether he is earning his own support. See Annot., 32 A.L.R.3d 1055 (1970).

■ Richard's main contention on appeal is that "under the law he had the right to emancipate his daughter whenever he chose to do so; and, that when he did so, his support obligation for her under the judgment order [sic] terminated in accordance with its terms." The thrust of this argument is that under the authority of *Romine v. City of Watseka* (1950), 341 Ill. App. 370, 91 N.E.2d 76, a parent's intention to emancipate a child is controlling, and once Richard determined to emancipate Margaret, his duty to support her terminated in accordance with the provisions in the judgment of dissolution of marriage.

This contention is without merit. In *Romine v. City of Watseka* (1950), 341 Ill. App. 370, 91 N.E.2d 76, the court was concerned with the parents' written relinquishment of their right to their minor son's wages and earnings which were included as damages requested in his personal injury suit brought against the city of Watseka. In the context of the parents' declaration that they were assigning all right to recover such monies to the minor's guardian, the court held the parents had emancipated their child and relinquished their right to his wages and earnings during his minority. (341 Ill. App. 370, 380-81, 91 N.E.2d 76.) The decision in *Romine* has no application to a parent's obligation to support a minor child under the Illinois Marriage and Dissolution of Marriage Act or to the section 510(c) provision for termination of the child-support obligation by emancipation.

■ Under the facts present here, Margaret's earnings of approximately $41 per week from her part-time job are clearly insufficient to establish that she was self-supporting, nor did she herself seek to be financially independent. She had not abandoned her mother's home, a factor sometimes deemed relevant. (*Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 968, 301 N.E.2d 167; *In re Marriage of Weisbart* (1977), 39 Colo. App. 115, 564 P.2d 961.) Her act of quitting school against her father's wishes is an insufficient reason for refusal to comply with the support provisions of a court decree. (*Allison v. Binkley* (1953), 222 Ark. 383, 259 S.W.2d 511.) From the evidence found in this record, we conclude Margaret was not emancipated prior to her reaching age 18, and that portion of the order which terminated Richard's obligation to pay child support is vacated. Having reached this decision, we need not address Marie's second contention that the date on which Margaret was found to be emancipated by the trial court was incorrect.

■ Marie's final contention is that the trial court erred in deny-

ing her petition for attorney fees incurred in presenting her rule to show cause and defending the petition to terminate child support. Under section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 508(a)) the trial court may order either spouse to pay a reasonable amount for attorney fees necessarily incurred by the other spouse in any proceeding under the Act. The general rule in this regard is that to justify allowance of attorney fees the party seeking the relief must show financial inability to pay and the ability of the other spouse to do so. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 581, 373 N.E.2d 576.) Financial inability exists where payment would strip the person of the means of her support and undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 975, 441 N.E.2d 336.) The allowance of attorney fees is within the sound discretion of the trial court, and its determination will not be overturned unless the trial court has clearly abused its discretion. *Hofmann v. Hofmann* (1983), 94 Ill. 2d 205, 229, 446 N.E.2d 499.

We need not discuss the question of Marie's financial inability to pay her attorney fees since she has completely failed in her burden to show Richard's ability to pay these fees. (See *In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 614-15, 414 N.E.2d 1188.) There is no evidence of Richard's assets, his past income, or his current income other than his testimony that while recovering from an operation he was only receiving income of $475 per month from a partnership. We find no abuse of discretion by the trial court in denying attorney fees on this basis.

Nevertheless, Marie also maintains that she is entitled to those attorney fees incurred by her which relate to her petition for a rule to show cause based on Richard's arrearage in child support for Margaret. It was stipulated that Richard was in arrears since September 1981, and the evidence shows he stopped Margaret's support payments when she continued to refuse to attend school. In its order dismissing the rule to show cause, the trial court found Richard unilaterally ceased support payments, but found the failure to pay was not "wilful and wanton" because of the controversy concerning Margaret's education.

When it becomes necessary for a party to go into court in order to enforce rights under a judgment of dissolution, the party who is thus forced to resort to judicial process to secure compliance with the terms of the judgment is entitled to her reasonable attorney fees even absent a showing of inability to pay those fees. (*Tippet v. Tippet* (1978), 65 Ill. App. 3d 1018, 1020, 383 N.E.2d 13; *Gaines v. Gaines*

(1969), 106 Ill. App. 2d 9, 15, 245 N.E.2d 574.) While the trial court found Richard's unilateral cessation of child-support payments not to be "wilful and wanton" because of the ongoing controversy over Margaret's education, and dismissed the rule to show cause, we conclude that Richard was still not justified under the circumstances in this record in unilaterally terminating child-support payments previously ordered under the judgment of dissolution. (See Ill. Rev. Stat. 1981, ch. 40, par. 508(b), as amended by Pub. Act 82—515, effective January 1, 1982.) We, therefore, find the trial court abused its discretion in denying Marie her reasonable attorney fees incurred in pursuing the rule to show cause.

Marie's attorney's affidavit in the record indicates two hours time for preparation of the rule to show cause and a conference with Marie, 1/2-hour time for a court appearance on the rule to show cause, and two hours time drafting Marie's affidavit and petition for fees. The trial court specifically found the work, time, and effort spent by Marie's attorney to be reasonable and the nature of the petition for attorney fees usual and customary. The hourly rate was listed in the affidavit as $65. Thus, we award Marie her reasonable attorney fees in relation to the rule to show cause in the amount of $292.50.

In sum, that portion of the March 30, 1982, order which terminated Richard's child-support obligation for Margaret is vacated and reversed, and the order of April 12, 1982, denying Marie's petition for attorney fees is reversed and judgment is entered in favor of Marie in the amount of $292.50 for attorney fees.

Vacated and reversed in part; and reversed and judgment entered in part.

HOPF and VAN DEUSEN, JJ., concur.