*In re* MARRIAGE OF LARRY ADMIRE, Petitioner-Appellee, and JOANN ADMIRE, Respondent-Appellant.

Fifth District    No. 5—88—0321

Opinion filed December 12, 1989.

Lynn M. Travis, of Coppinger, Carter, Schrempf & Blaine, Ltd., of Alton, for appellant.

David K. Stalker, of Alton, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Respondent, Joann Admire, appeals from a judgment of the circuit court of Madison County which denied, in part, her second amended petition for a rule to show cause why petitioner, Larry Admire, should not be held in contempt of court, and granted petitioner's motion for setoff. For the reasons which follow, we affirm in part and reverse and remand in part with instructions.

The record before us shows that the parties' marriage was dissolved pursuant to a judgment of dissolution entered by the circuit court of Madison County on September 2, 1980. Following post-judgment motions, that judgment was subsequently amended by orders

entered by the court on January 7, 1982, and May 4, 1982. As so amended, the judgment of dissolution required, *inter alia*, (1) that petitioner maintain at least $30,000 of life insurance on his life and make respondent the beneficiary of that insurance; (2) that petitioner pay all marital debts and family expenses incurred before September 2, 1980; (3) that petitioner pay respondent $5,000 in maintenance under an installment plan, with payments to commence on the fifth anniversary of the September 2, 1980, dissolution judgment; and (4) that respondent be "awarded the marital residence as her sole and separate property free and clear of any interest of Petitioner."

With respect to the issue of maintenance, the judgment of dissolution, as amended by the circuit court's order of May 4, 1982, specifically provided that petitioner was to pay the $5,000 he owed, in annual installments of $1,000 each, commencing on the fifth anniversary of the September 2, 1980, judgment. The judgment further provided that petitioner was to pay respondent interest at the rate of 6% per annum during the four-year period before the $1,000 annual payments commenced.

With respect to the award of the marital residence to respondent, the dissolution judgment, as amended by the circuit court's order of January 7, 1982, provided that the residence belonged solely to respondent, to keep or sell as she saw fit, and that petitioner was to

"continue to pay the existing mortgage on said property until it is paid in full. The Respondent is under no obligation to repay the Petitioner the amount of the mortgage so paid, or to be paid at any time in the future, by Petitioner. In the event that Respondent decides to sell the marital residence, Petitioner is ordered to make necessary arrangements to pay, and shall pay, the mortgage balance in full at the time of the sale (including interest too) so that the total amount realized from the sale shall be the exclusive property of the Respondent."

The terms of the original September 2, 1980, judgment of dissolution further required petitioner to pay the insurance on the residence, while responsibility for taxes was placed on respondent. These requirements remained unchanged by either of the subsequent modifications.

In November of 1984, respondent filed a petition for a rule to show cause why petitioner should not be held in contempt of court. That petition was subsequently amended in May of 1985, then amended for a second time in September of 1987. In her second amended petition, respondent alleged that petitioner had failed to make any of the payments required by the dissolution judgment with

respect to maintenance, that he had failed to maintain a $30,000 life insurance policy on his life with respondent as the beneficiary, that he had failed to pay all of the marital debts and expenses incurred before September 2, 1980, and that the marital residence had been foreclosed upon because petitioner had failed to pay off the mortgage when it fell due. Respondent requested that petitioner be held in contempt of court for failure to comply with the terms of the dissolution judgment, that he be ordered to pay respondent the monies he owed her pursuant to that judgment, that he be required to pay to her the value of the "property of the marital residence lost to foreclosure," and that she be awarded her reasonable attorney fees.

Petitioner responded by filing a petition of his own in which he requested that he be granted a setoff against any monies which he owed respondent and that respondent be ordered to pay him the sum of $29,625.58. As grounds for this request, petitioner alleged that he had been forced to pay the real estate taxes on the marital residence for the years 1981 through 1983, even though the September 2, 1980, judgment of dissolution had made the payment of those taxes respondent's responsibility. Petitioner further alleged that the foreclosure on the marital residence was actually caused by respondent as a direct result of her "failure to either sign a new mortgage, execute and convey a deed in lieu of foreclosure, or letting the marital residence deteriorate and waste," and that because of the foreclosure he did not receive $29,625.58 which he would otherwise have been paid. Petitioner's claim to this $29,625.58 was premised on his belief that the September 2, 1980, dissolution judgment required respondent to sell the marital residence by a certain date and to pay him $29,625.58 out of the proceeds of that sale, which sum was equivalent to the amount of the mortgage held by the bank on the property.

In making this claim to the sale proceeds, petitioner evidently failed to recognize that the terms of the original dissolution judgment had been amended. As previously indicated, the January 7, 1982, amendment to the dissolution judgment specified that the marital residence was now respondent's sole and separate property; respondent was no longer obligated to sell the residence; and if she did choose to sell the residence, she had no obligation to repay petitioner for the amounts he had paid on the mortgage. To the contrary, the amended dissolution judgment expressly provided that if respondent were to sell the residence, petitioner would have to pay off the mortgage so that the total amount realized from the sale would belong exclusively to respondent.

A hearing on respondent's second amended petition for a rule to

show cause and on petitioner's setoff petition was held on October 28, 1987, and April 18, 1988. At that hearing, petitioner no longer pressed his claim for the $29,625.58 in lost proceeds from the sale of the marital residence. He argued, however, that he should be given a setoff for the attorney fees and expenses which he had paid when the marital residence was foreclosed upon, as well as for the real estate taxes he had paid on the house.

On May 9, 1988, the circuit court entered a judgment which denied all of the relief requested by respondent, except that it ordered petitioner to name respondent as a beneficiary on his life insurance policy. In ruling against respondent, the circuit court expressly found that the foreclosure on the marital residence and the expenses related thereto, amounting to $7,528.56, were the sole responsibility of and were caused by respondent. The court further found that petitioner had paid $1,479.65 for the 1982 and 1983 real estate taxes on the marital residence. Because petitioner had borne those amounts, the circuit court allowed petitioner to take them as a setoff against the maintenance he owed respondent under the dissolution judgment. Because petitioner had been required to incur the attorney fees and costs in connection with the foreclosure proceeding and because the court believed that respondent had failed to adequately prove her claim for payment of prior marital debts, the court likewise refused to require petitioner to pay any sums regarding those debts. In addition, respondent's request for the attorney fees incurred by her in bringing her second amended petition for a rule to show cause was denied, and both parties were ordered to bear their own attorney fees. From this judgment respondent now appeals.

■ ■ There is no dispute that the maintenance and property-settlement provisions of a dissolution judgment may be enforced through contempt proceedings. (*In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 396, 466 N.E.2d 1016, 1020, *cert. denied* (1985), 471 U.S. 1017, 85 L. Ed. 2d 305, 105 S. Ct. 2023.) The power to enforce an order to pay money in a dissolution case through contempt is limited to situations in which there has been a wilful refusal to obey the order. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175.) The failure of a party to make the payments required by a court order or judgment is, however, *prima facie* evidence of contempt. Once a failure to make payment has been shown, the burden shifts to the alleged contemnor, who may then defend by showing that he is unable to pay. (*Logston*, 103 Ill. 2d at 285, 469 N.E.2d at 175.) Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb the

finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Logston*, 103 Ill. 2d at 286-87, 469 N.E.2d at 176.

■ It is well settled that a judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. (*Briggs v. Gaddis* (1985), 133 Ill. App. 3d 704, 707, 479 N.E.2d 350, 352.) The findings of the trial court must, of course, be accorded great deference, and in reviewing those findings we are obligated to view all of the evidence in the light most favorable to the party who prevailed at trial. Where the trial court's findings are contrary to the manifest weight of the evidence, however, it is also our duty to reverse. *Cornstubble v. Ford Motor Co.* (1988), 178 Ill. App. 3d 20, 24, 532 N.E.2d 884, 886.

■ In the matter before us, there is no dispute that the circuit court properly ordered petitioner to name respondent as beneficiary on a $30,000 insurance policy on petitioner's life, and we do not believe that the circuit court erred when it refused to order petitioner to pay respondent the amounts she claimed he owed for marital debts and family expenses incurred before September 2, 1980. Although respondent adduced various canceled checks, receipts, and other documentation in support of her claim regarding nonpayment of marital debts and household expenses, respondent had difficulty substantiating that the documentation she submitted did, in fact, represent expenses which petitioner was obligated to pay under the dissolution judgment. In many cases, respondent had no recollection at all of what a particular check or receipt was for. Petitioner, for his part, denied that he still owed amounts for marital debts and expenses incurred up to September 2, 1980, the date of the dissolution judgment. Moreover, the circuit court indicated that many of the same expenses for which respondent was seeking reimbursement had been the subject of a prior show cause petition and that a ruling had already been made that those expenses had been paid. We therefore cannot say that the circuit court's refusal to order petitioner to pay respondent additional sums for marital debts and expenses was contrary to the manifest weight of the evidence. To this extent, the circuit court's judgment shall be affirmed.

With respect to the issue of maintenance, however, the circuit court's judgment cannot stand. There was absolutely no dispute that petitioner failed to make any of the payments for maintenance required by the circuit court's dissolution judgment. The circuit court nevertheless concluded that this nonpayment should be excused and a

setoff granted to petitioner because, as petitioner had argued, (1) petitioner had borne the expense of the foreclosure upon the marital residence and paid the taxes on the residence for 1982 and 1983, and (2) petitioner would not have had to bear these expenses had it not been for respondent. We disagree.

Although there is no question that petitioner did, in fact, pay the expenses of the foreclosure, the manifest weight of the evidence established that the foreclosure occurred only because petitioner had failed to pay off the mortgage on the residence when it fell due, as required by the express terms of the January 7, 1982, amendment to the dissolution judgment. It did not result from any act or omission attributable to respondent.

Petitioner attempted to shift responsibility for the foreclosure onto respondent by arguing that the foreclosure actually took place because she had abandoned the premises. This is simply not so. While it is true that respondent was forced to move out of the residence because she did not have adequate funds to make some necessary repairs, this is not why foreclosure proceedings were initiated. The complaint for foreclosure plainly alleged that foreclosure was being pursued because the "[m]ortgagor has failed to pay the balance on the note when due on July 20, 1982, and is in default with the full balance due ***." This was not contradicted by anything in the decree of foreclosure ultimately entered by the court, which indicated simply that the allegations of the complaint, including the foregoing allegation, were "true and proven." In addition, Dwane Bruns, executive vice-president of the bank which held the mortgage, specifically testified that the residence was foreclosed upon because the note had expired. According to Bruns, "We needed to sign a new note or get it paid off, and we couldn't get either one so we foreclosed." Bruns further stated that if the note had been paid off or renegotiated, the foreclosure would not have taken place.

The only evidence to the contrary consisted of petitioner's own testimony that the marital residence was actually foreclosed upon because it was "vacant and unoccupied." How petitioner arrived at this conclusion was never really explained. It appears, however, that petitioner based his claim solely on his own reading of the foreclosure decree, which included a reference to the fact that, at the time the decree was entered, the residence was vacant and had been abandoned. What petitioner fails to comprehend is that the decree, which has been included in the record before us, did not purport to mention that the house was vacant in order to explain why the foreclosure was being permitted. As just discussed, the foreclosure was sought simply

because the balance had fallen due on the note and was not paid off or renegotiated. The foreclosure had nothing to do with whether the residence was occupied or vacant. Indeed, under the terms of the mortgage itself, which has also been included in the record, the mere fact that the residence was vacant and unoccupied would not have entitled the bank to bring foreclosure proceedings.

In our view, the question of whether the residence was vacant or occupied was relevant only because if the premises had been occupied by the owner as a residence or homestead, there may have been a question as to whether the bank should have permitted the owner to remain in such occupancy following the foreclosure. (See Ill. Rev. Stat. 1983, ch. 110, par. 15—309.) As we read the foreclosure decree, the court mentioned that the house was vacant only to indicate that this additional question did not have to be addressed.

As previously indicated, petitioner also attempted to argue that respondent should be held responsible for the foreclosure, and that he should be granted a setoff for the foreclosure expenses, because respondent failed to either sign a new mortgage or execute and convey a deed in lieu of foreclosure when the original mortgage fell due in 1982. This claim is likewise without merit.

The flaw in petitioner's argument is that under the express terms of the dissolution decree, respondent had no obligation to participate in further financing arrangements with respect to the marital residence. We point out again that under the dissolution judgment, as amended by the circuit court's January 7, 1982, order, responsibility for paying the mortgage rested exclusively with petitioner. When the note on the residence fell due, it was the duty of petitioner and of petitioner alone to make appropriate arrangements to either pay off the mortgage or refinance it. This was a duty which petitioner simply failed to meet. To shift responsibility for this failure on respondent, which is what the circuit court here did, is flatly inconsistent with the dissolution judgment's terms. Respondent cannot be penalized for refusing to assume an obligation which she was not required to bear.

■ Because the evidence established that the foreclosure resulted exclusively from petitioner's failure to meet his obligations under the dissolution judgment and was in no way attributable to respondent, the expenses incurred by petitioner in connection with the foreclosure should not have been allowed as a setoff against the amounts he owed respondent for maintenance, and petitioner should have been held in contempt of court for failure to make those maintenance payments. Petitioner should likewise have been held in contempt of court for failing to pay off the mortgage, which he was required to do, thereby

causing respondent to lose the marital residence, which had been awarded to her free and clear of any interest of petitioner. Correspondingly, petitioner should have been required to pay respondent not only the amounts he owed her for maintenance under the terms set forth by the dissolution judgment, but also a sum to compensate her for the value of the lost residence.

The record shows that following the foreclosure, the marital residence was sold for $25,500. Because no additional evidence was adduced with respect to the home's fair market value, we believe that this is the amount by which respondent's loss of the residence should have been measured. This, then, leads to the question of the real estate taxes paid on the residence for 1982 and 1983.

■ Although the evidence as to who paid those taxes was less than unequivocal, we believe that there was a sufficient basis to support the trial court's conclusion that they were ultimately borne by petitioner. Because the taxes, amounting to $1,479.65, would undeniably have been respondent's responsibility had petitioner adhered to his obligations under the dissolution judgment and not allowed the foreclosure to take place, the amount of the taxes is therefore properly deductible from the amount which petitioner should be required to pay respondent. To hold otherwise would result in a windfall to respondent and place her in a better position than she would have been in had petitioner not violated the terms of the dissolution judgment. We believe, however, that the amount of the taxes paid should be allowed as a setoff not against petitioner's maintenance obligations, but against the amount he owes respondent for loss of the residence. Accordingly, the net amount petitioner should have been ordered to pay respondent for her loss of the residence is $24,020.35 ($25,500 minus $1,479.65).

■ ■ We also believe that petitioner should have been required to pay the reasonable attorney fees incurred by respondent in prosecuting her petition for a rule to show cause. Petitioner argues that the trial court's ruling that each party should bear his own fees and costs was substantiated by the record because the evidence showed that respondent earned a substantial income, while no testimony was elicited from petitioner regarding his income or assets. It is axiomatic, however, that when it becomes necessary for a party to go into court in order to enforce rights under a judgment of dissolution, the party who is thus forced to resort to judicial process to secure compliance with the terms of the judgment is entitled to her reasonable attorney fees even absent a showing of inability to pay those fees. (*In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 477, 448 N.E.2d

1030, 1035.) That is precisely the situation present here. As set forth in this record, petitioner failed to meet his obligations under the dissolution judgment, his failure to do so was not justified, and respondent had no recourse but to proceed against him through a contempt action. For the circuit court to deny respondent her reasonable attorney fees in pursuing her rule to show cause therefore constituted an abuse of discretion and must be reversed.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed insofar as it ordered petitioner to name respondent as a beneficiary on a $30,000 life insurance policy on his life and refused to hold petitioner in contempt of court for failure to pay marital debts and family expenses incurred before September 2, 1980. The judgment is reversed insofar as it failed to hold petitioner in contempt of court for failing to make the maintenance and mortgage payments required by the dissolution judgment and denied respondent her reasonable attorney fees. In addition, the cause is hereby remanded to the circuit court with instructions to enter an order:

> (a) adjudging petitioner guilty of contempt of court for failing to make the maintenance and mortgage payments required by the dissolution judgment;
>
> (b) requiring petitioner to pay respondent the maintenance specified by the dissolution decree and the sum of $24,020.35, representing the value of the marital residence less the 1982 and 1983 real estate taxes paid on the residence;
>
> (c) establishing appropriate measures to compel petitioner to make the foregoing payments and purge himself of his contempt; and
>
> (d) awarding respondent the reasonable attorney fees she has incurred in prosecuting her rule to show cause petition.

Affirmed in part; reversed and remanded in part with instructions.

HOWERTON and GOLDENHERSH, JJ., concur.