*In re* MARRIAGE OF JOYCE RYMAN, Petitioner-Appellant, and LOW-ELL RYMAN, Respondent-Appellee.

Second District No. 2—87—0741

Opinion filed July 5, 1988.

600

Robert A. Chapski, of Law Office of Robert A. Chapski, Ltd., of Elgin (Charles A. Canning, of counsel), for appellant.

Thomas P. Young, of Muscarello, Crisanti & Young, of Elgin, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

On January 21, 1987, a judgment was entered as to Joyce A. Ryman (the Wife) and Lowell Edward Ryman (the Husband) in the circuit court of Kane County, dissolving their marriage of 25 years. Following a hearing on the Wife's post-trial motion, which was denied in part and granted in part, the trial court on June 22, 1987, adopted additional findings and amended the judgment of dissolution in accordance with its rulings on the Wife's post-trial motion. The enforcement of the trial court's judgment was stayed pending appeal. The Wife appeals from the judgment of dissolution entered January 21, 1987, as modified on June 22, 1987.

On appeal, the Wife claims that the trial court erred in the following ways: (1) in failing to reimburse the marital estate for its contributions to the nonmarital life insurance policies of the Husband; (2) in improperly charging the expenditure of marital assets for a car and a vacation to the Wife and failing to distribute the marital assets in just proportions pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1985, ch. 40, par. 503); (3) in failing to properly consider the relevant factors under section 504 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 504) and thereby awarding insufficient maintenance; (4) in failing to award the Wife a portion or all of her attorney fees; and (5) that the trial court was prejudiced against the Wife.

At the time the judgment of dissolution was entered, the Wife was 43 years old, and the Husband was 45 years old. The parties in the course of their marriage had two children; Rene, 21, was employed and living at home, and Jeffrey, 17, was a senior in high school and living at home.

The record shows that the Husband has been employed as a technician at WGN Studios for approximately 20 years. The Husband's gross wages for the year 1984 and 1985 were $53,500 and $54,500 respectively. It was established at trial that the Husband was getting a retroactive pay increase for 1986 but the amount of the raise had not yet been determined. The Wife has a high school education and made a homemaker's contribution to the marriage. The Husband testified that he did not want his Wife to work unless she wanted to. The Wife worked part time in 1978 as a receptionist in a real estate office. The Wife worked part time as a receptionist in a doctor's office during

1984 and 1985 at approximately $7 per hour. The Wife was employed in June 1986 full time at $6 per hour for AT&T doing clerical work as a temporary replacement for women on pregnancy leave. This job was to terminate at the end of December 1986. The tax returns for 1984 and 1985 show the Wife earned gross wages in the amount of $1,900 and $5,400, respectively. The Wife testified to having problems with her back. However, the evidence deposition of the Wife's doctor indicates no disability and states she is capable of full employment.

The Husband filed an affidavit of monthly expenses in the approximate amount of $1,700. The Wife had filed an affidavit of monthly expenses in March 1986 in seeking temporary support; however, the trial court refused to consider this affidavit at trial because it was based on a time when the Husband was present in the household. However, this did not prevent the trial court from awarding the Wife temporary support and maintenance of $350 per week plus utilities based on that same affidavit when the Husband left the marital home in March 1986.

The Husband had nonmarital property consisting of the three life insurance policies with a total cash surrender value of $5,690 and a small inheritance of $1,000. The Wife had nonmarital property represented by an inheritance in the amount of $38,640 at the time of trial. Prior to trial, the Wife expended $12,683 of her inheritance represented by approximately $4,000 she spent on doctor and attorney fees and approximately $8,000 which she gave to the daughter Rene. The marital property in existence at trial and available for distribution consisted of the following: (1) life insurance policy valued at $922; (2) the Husband's IRA valued at $2,000; (3) the Husband's employment pension valued at $3,857; (4) the Tribune employees' credit union account (savings account) valued at $4,248; (5) shares of stock valued at $480; (6) a savings account at Home Federal Savings in the amount of $1,622; (7) and two silver bars with a total value of $140. Additionally, the trial court specifically valued a washing machine, television set and tractor engine block purchased by the Husband with marital funds at $700, $700 and $500, respectively. The only other significant marital asset was the marital residence valued at $127,000. The outstanding mortgage was $16,750. The trial court found the selling costs to be $12,700. Subtracting the outstanding mortgage and selling costs, the marital residence had a cash value of $97,550 at the time of judgment. The trial court awarded both spouses their separate property and their respective vehicles. The trial court awarded the Wife one-half the marital savings ($2,935) and the two silver bars ($140) for a total of $3,075. The Husband received the rest of the marital property, except for the marital residence, with a total value of $12,094. The residence was to

be sold when Jeffrey finished high school, with the Wife to receive one-half the proceeds plus $10,000 from the Husband's half of the proceeds. At the time of judgment this would give the Wife a $58,775 interest in the proceeds upon sale and the Husband a $38,775 interest in the proceeds of the sale. (For a list of the property and its distribution, see Appendix.) The court ordered the Wife to pay the 1985 real estate taxes and all future real estate taxes as they became due. The custody of the minor son Jeffrey was given to the Wife. The trial court order provided for child support equal to 20% of the Husband's net pay until the minor finished high school, which was to be after the minor's 18th birthday. The court reserved its jurisdiction to determine the issue of funding Jeffrey's college education. The court ordered the Husband to pay $300 per month maintenance to the Wife for the first year and $150 per month for the second year. The court made the maintenance award nonmodifiable. Each party was to pay his or her own attorney fees.

### I. DISTRIBUTION OF MARITAL PROPERTY

■ On appeal, the Wife contends that the trial court's distribution of the marital property pursuant to section 503 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503) was based on erroneous findings; that the trial court failed to properly consider the factors listed under section 503 of the Act, and that the resulting distribution of the marital property was an abuse of discretion. In distributing the parties' property under section 503, the trial court must first make certain findings in order to classify each item of property as either "marital" or "nonmarital." (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) Second the trial court must determine whether either party has made a showing by clear and convincing evidence that one estate of property has contributed to another, thus entitling the contributing estate to reimbursement under section 503(c)(2) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2)). Third, the trial court must assign each spouse his or her nonmarital property, and then considering all relevant factors including those listed in section 503(d) of the Act, the trial court "shall divide the marital property *** in just proportions." Ill. Rev. Stat. 1985, ch. 40, par. 503(d); *Thornton*, 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

■ First we address certain findings and orders of the trial court, which the Wife argues are not supported by the record. Specifically, the Wife contends the trial court abused its discretion: (1) in failing to reimburse the marital estate for its contributions to the maintenance of the Husband's three nonmarital life insurance policies; (2) in allocat-

ing to the Wife's share of marital property, $11,500 or marital savings representing $8,000 spent on a 1981 Cutlass in January 1983 and $3,500 spent on a European vacation with the minor son in 1984; (3) in allocating to the Wife a $2,600 debt representing the, as yet, unpaid 1985 real estate taxes which were due and payable in 1986. On review, the findings of a trial court in a marriage dissolution proceeding will not be set aside unless they are clearly against the manifest weight of the evidence. *Fields v. Fields* (1977), 54 Ill. App. 3d 400, 369 N.E.2d 586.

### A. HUSBAND'S THREE NONMARITAL LIFE INSURANCE POLICIES

■ The Wife argues on appeal that the trial court erred in failing to reimburse the marital estate for its contributions to three nonmarital life insurance policies of the Husband. The Wife argues that the trial court, in its judgment of dissolution on January 21, 1987, found the marital estate entitled to reimbursement but erroneously concluded that there was no evidence offered to show the amount of reimbursement. When the Wife raised this issue in her post-trial motion, the trial court disregarded the Wife's argument on valuation of reimbursement and denied reimbursement to the marital estate on the theory that the marital estate had already received substantial benefits by being protected in the event of the Husband's death, and because the court was requiring the Husband to maintain the insurance for the benefit of the Wife while the support obligations of the Husband continued. The Wife contends that the trial court's ruling was error in that: (1) evidence sufficient to determine reimbursement was introduced, and (2) the benefits received due to the coverage in the event of the Husband's death is not "property" within the meaning of section 503 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 503). We agree. The relevant statute provides:

> "When one estate of property makes a contribution to another estate of property, *** the contributing estate *shall* be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not re-traceable by clear and convincing evidence ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2).)

The value of an insurance policy may be determined from its cash surrender value less any amounts borrowed against the insurance policy's cash surrender value. (*In re Marriage of Mullins* (1984), 121 Ill. App. 3d 86, 458 N.E.2d 1360 (trial court properly assigned a zero value to a insurance policy with a cash surrender value of $14,000 where $14,000

had been borrowed against the cash surrender value of the insurance policy).) In valuing an insurance policy as "property" under section 503, the health and life insurance benefits enjoyed by the marital estate are not included in the valuation process as "property." *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557.

■ In the instant case, the three life insurance policies at issue were found to be nonmarital property of the Husband, and that finding is not before us on review. The trial court found the cash surrender value of the Husband's three policies to be $5,690. It was established by clear and convincing evidence that the marital estate paid $4,492.50 to maintain these policies of the Husband. The trial court went as far as to find that the marital estate would be entitled to contribution. However, when the Wife, at the hearing on her post-trial motion, showed that there was clear and convincing evidence as to the amounts of contribution, the trial court offset the marital estate's right to reimbursement with the benefits of the coverage received by the marital estate and refused to reimburse the marital estate. The trial court abused its discretion when it denied reimbursement to the marital estate. First, section 503(c)(2) of the Act mandates reimbursement to the contributing estate for contributions retraceable by clear and convincing evidence. (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2).) Section 503(c)(2) of the Act further provides:

> "*The court may provide for reimbursement out of the marital property to be divided* or by imposing a lien against the nonmarital property which received the contribution." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 503(c)(2).)

The trial court erred when it attempted to offset the marital estate's right to reimbursement with the benefits of coverage received by the marital estate because such benefits are not "marital property" as that term is used in section 503. (*In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557.) The trial court's refusal to reimburse the marital estate was an abuse of discretion. *In re Marriage of Fryer* (1980), 88 Ill. App. 3d 454, 410 N.E.2d 596 (if trial court states positively that it is disregarding one or all of the factors set forth in section 503 of the Act, it may be said that an abuse of discretion has occurred).

■ As will be discussed later in this opinion, we find it necessary to remand this cause to the trial court. On remand, the amount of reimbursement to which the marital estate is entitled may be determined by multiplying the cash surrender value of the policies by the ratio of marital contributions to the total amount of premiums paid. We note that the record indicates that one of these policies may have been en-

cumbered with a loan used for the re-siding of the marital home. The trial court, if the Husband so desires, should receive additional evidence on this issue in determining the amount of reimbursement to the marital estate.

### B. THE EUROPEAN TRIP

The trial court, as part of its distribution of the marital assets, credited to the Wife's share $11,500, representing the amount spent from a marital savings account for a car and a trip to Europe with the minor son, Jeffrey. In effect, the trial court implicitly found that the Wife had dissipated marital assets. Dissipation has been defined as "the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at the time that the marriage is undergoing an irreconcilable breakdown." *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1019, 471 N.E.2d 1008, 1011.

The record shows that marital difficulties began sometime in 1983, and that in October 1983 the Husband began to give the Wife $400 a week to cover the family's expenses. Prior to this time, the Husband had given his paycheck to the Wife, who deposited it in a marital account and paid the family expenses. The Husband also opened his own checking and savings account in late 1983 or early 1984. The Wife filed her petition for dissolution of marriage on July 13, 1984. The record shows that approximately two month's prior to filing for divorce, the Wife used $3,500 in marital savings for her trip. The testimony of the Wife on direct examination was that initially the Husband agreed with her plans. However, on cross-examination the Wife testified that the Husband changed his mind and expressed his opposition within "a couple of hours." Based on the record, the trial court's implicit finding that the Wife dissipated $3,500 of marital assets on her European trip and the trial court's allowance for its finding in distributing the marital property was not an abuse of discretion. *Smith*, 128 Ill. App. 3d 1017, 471 N.E.2d 1008; Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(1).

### C. THE CAR

However, the trial court's implicit finding that the Wife dissipated marital assets in the purchase of a car was against the manifest weight of the evidence, and the trial court's reliance on that finding in its allocation of marital property was an abuse of discretion. (*In re Marriage of Fryer* (1980), 88 Ill. App. 3d 454, 410 N.E.2d 596.) The record shows that the Husband purchased a 1982 Toyota pickup truck in late 1982. This purchase was financed with a loan from the Hus-

band's credit union. The truck loan had been paid off at the time of trial (apparently with marital funds). A used 1981 Cutlass was purchased with $8,000 of marital savings in January of 1983 for the Wife's use. The Husband only testified that the 1981 Cutlass was purchased for $8,000. The Wife testified that the Husband was an active participant in the purchase of the car. She testified that *they* decided to pay cash because they did not want to take out another loan at a high interest rate. This testimony was uncontradicted by the Husband and the only evidence on the issue. In light of the fact that the Husband was an active participant in the purchase of the 1981 Cutlass, the trial court's implicit finding that the Wife dissipated marital assets was against the manifest weight of the evidence. It was an abuse of discretion for the trial court to charge the Wife's share of the marital property with $8,000 in dissipation of assets for the purchase of the 1981 Cutlass.

### D. 1985 REAL ESTATE TAXES

■ The trial court's distribution of property included an order for the Wife to pay the 1985 real estate taxes which became due and payable in 1986. The record shows that the Wife filed an affidavit of monthly living expenses when she sought temporary support in March 1986 after the Husband moved out. Included in this affidavit as an item was approximately $217 per month for the real estate taxes on the marital home. The trial court granted the Wife temporary support in the amount of $350 per week based on this affidavit. In spite of receiving this temporary support, the Wife failed to make payments on the 1985 real estate taxes as they became due in 1986. The record does not show any reason for the failure of the Wife to pay the taxes as they became due, nor does the Wife explain this failure in her brief. She was residing in the residence and receiving funds from the Husband due to a court order which included an amount requested by her for the payment of the real estate taxes. The Wife's failure to pay the real estate taxes could be properly characterized as dissipation of marital assets. (See *In re Marriage of Aslaksen* (1986), 148 Ill. App. 3d 784, 500 N.E.2d 91 (husband dissipated assets where he failed to make court-ordered mortgage payments while still collecting $60,000 per year which resulted in the institution of foreclosure proceedings).) The trial court's allocation of the outstanding debt for the 1985 real estate taxes to the Wife which were due and payable in 1986 was not an abuse of discretion.

## II. MAINTENANCE AWARD

The Wife contends on appeal that the trial court abused its discretion under section 504(b) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 504(b)) when it: (1) improperly considered her refusal to file a joint tax return in 1985; (2) failed to consider her medical problems; and (3) awarded inadequate maintenance as to amount and period.

 █ Section 504 of the Act sets forth the standard for awarding maintenance. It provides that once the court determines that maintenance is appropriate, an issue which is not in dispute here, the amount and duration of the award shall be "as the court deems just" after considering all relevant factors. (Ill. Rev. Stat. 1985, ch. 40, par. 504.) Section 504(b) of the Act states:

"(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, made without regard to marital misconduct and may be in gross or for fixed or indefinite periods of time and the maintenance may be made from the income or property of the other spouse after consideration of all relevant factors, including:

(1) the financial resources of a party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties;

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) the tax consequences of the property division upon the respective economic circumstances of the parties." (Ill. Rev. Stat. 1985, ch. 40, par. 504(b).)

"[E]xcept where the financial situation of the paying spouse, the duration of the marriage, or the health of the parties otherwise indicates, section 504(b) requires that the amount of maintenance be sufficient to provide the spouse seeking maintenance with the standard of living established during the marriage. The amount of maintenance is reduced by the amount the party seeking maintenance has available to provide

herself with this standard of living. The 'needs' referred to in section 504(b) should be construed in light of the standard of living established during the marriage." (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1087, 412 N.E.2d 1336, 1343-44.) Further, where the property awarded to the spouse seeking maintenance is not so substantial as to provide significant income for her to live on in the style enjoyed in the marriage, and where the spouse from whom maintenance is sought has sufficient income to meet his own needs while meeting those of his spouse, the spouse seeking maintenance is not required to sell her assets or impair her capital in order to maintain herself in the manner established during the marriage. *Thornton*, 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

In the instant case, the trial court's order does not contain any findings as to the financial needs of the Wife. Nor does the record disclose sufficient evidence to allow this reviewing court to determine the Wife's needs. In light of the absence of evidence as to the financial needs of the Wife, we must reverse the trial court's award of maintenance and remand to the trial court for the taking of additional evidence and a new determination of the award of maintenance. *Fuqua v. Fuqua* (1978), 60 Ill. App. 3d 819, 377 N.E.2d 353; see *In re Marriage of Davis* (1985), 131 Ill. App. 3d 1065, 476 N.E.2d 1137 (trial court's failure to determine value of marital asset and lack of sufficient evidence to allow for such a determination precluded review of property distribution and required remand for further evidentiary hearings).

Further, our review of the record and the trial court's order awarding maintenance requires us to briefly discuss the Wife's contentions of error and the determination of this issue on remand in light of the manner in which the trial court dealt with the issue at trial. The trial court's order stated:

"7. That the wife had interest income of $5,390 during the calendar year 1985, as declared on her federal income tax return for that year. She refused to file a joint tax return for that year with the husband [thereby] causing the unnecessary expenditure of substantial marital funds for payment of income taxes. She testified that she put certain funds in her son Jeff's name 'to avoid taxes.' His 1984 tax return shows interest income of $2,264. It is impossible to determine, on the basis of the evidence before the Court, how much of that income, if any, should be attributed to Mrs. Ryman, or how much may be earned in 1986. Therefore, the Court is not considering any specific income figure in setting the support and maintenance in this matter."

First, the Wife's refusal to file a joint tax return should not have been considered in awarding maintenance. The trial court's finding that the Wife's refusal to file jointly caused the "unnecessary expenditure of marital funds" is speculation. The record does not contain any evidence as to why the tax liability of the parties increased in 1985 when they filed separately as opposed to 1984 when they filed a joint return. Nor do we understand why such a finding, if supported in the record, would affect the trial court's ability to determine the Wife's income. The Wife's separate 1985 tax return was admitted at trial.

Second, although the Wife testified to moving around her inheritance funds to avoid taxes, this did not prevent the trial court from taking account of the income-producing ability of these funds. Generally, a court may take judicial notice of the fair earning powers of money or invested capital over a certain time period. (*In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262 (held trial court's estimate of approximately 8% rate of return on investment of funds not an abuse of discretion).) In the instant case, the Wife testified to her investment of her inheritance funds in various certificates of deposit and other accounts. Documentary evidence was admitted as to these investments from which the trial court could have estimated a reasonable rate of return to allow some approximation of the income-producing ability of these funds. Some approximation of income is required in order for the trial court to be able to properly consider the financial resources of the parties. (See *Smith*, 100 Ill. App. 3d 1126, 427 N.E.2d 1262; Ill. Rev. Stat. 1979, ch. 40, par. 503(c)(4) (now found at Ill. Rev. Stat. 1985, ch. 40, par. 503(d)(4)) (contemplates that a trial court must make some approximation of the income available to a party in order to determine whether the marital home should be sold or maintenance should be awarded).) On remand, if the parties fail to introduce evidence as to the income-producing ability of these funds, the trial court should determine a reasonable rate of return on the investment of these funds in order to make some determination of their affect on the Wife's income.

Additionally, we note that the Husband has a substantial income as opposed to the Wife and that the Wife was awarded only $3,000 in liquid marital funds. While the Wife has significant nonmarital capital, if the Husband can afford maintenance in an amount sufficient to avoid the Wife having to impair her capital, such an award would be proper. (See *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) Such an award would also preserve the income-producing ability of the Wife's nonmarital funds, which should be considered in determining her ability to meet her financial needs.

Ill. Rev. Stat. 1985, ch. 40, par. 504.

■■ Third, the trial court's award of maintenance was nonmodifiable and was to terminate at the end of two years. While section 504(b) of the Act allows the trial court discretion to award maintenance of a limited duration, such an award is an abuse of discretion when there is no support in the record for a conclusion that the party receiving maintenance will be self-sufficient at the end of the period. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) The trial court appears to have chosen to award maintenance for a two-year period on the assumption that by the end of the two-year period the Wife would have completed her education and have a job and be able to support herself. But there is nothing in the record to support this assumption. The court should not award maintenance for a limited duration on what appears to be pure speculation. (*In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.) To the extent there is no evidence in the record to justify the limited nature of the Wife's maintenance award, the trial court abused its discretion.

■■ ■ Our determination that maintenance limited as to time is not supported in the record does not necessarily lead to the conclusion that permanent maintenance is required. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) However, a court should give more consideration to an award of permanent maintenance where, as here, the marriage was long, the Wife was a homemaker and raised the children, and she was unable to establish work skills or further a career. (*In re Marriage of Rubinstein* (1986), 145 Ill. App. 3d 31, 495 N.E.2d 659; *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868.) Maintenance is designed to allow a formerly dependant spouse to become financially independent in the future. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) The trial court may also consider an award for a fixed period of time while reserving jurisdiction to review the award at the end of such period to determine what efforts the spouse has made toward achieving the objective of self-sufficiency and whether those efforts have been successful. (*In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066.) Such an award places an affirmative duty upon the spouse receiving maintenance to seek work. See 100 Ill. App. 3d 293, 426 N.E.2d 1066.

■■ Lastly, we briefly address the Wife's contention that the trial court's finding that she suffered no physical disability was against the manifest weight of the evidence. The Wife testified to having minor arthritis in her back. However, the evidence deposition of the Wife's doctor, who treated her back pains, stated she was capable of full em-

ployment. Accordingly, the trial court's findings that the Wife's minor arthritis did not make her fully or partially disabled was not against the manifest weight of the evidence.

### III. DISPOSITION ON APPEAL

■ The issues of property disposition under section 503 of the Act and maintenance under section 504 of the Act are interrelated. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) While we might have considered whether or not the trial court's failure to reimburse the marital estate and its erroneous allocation of $8,000 for the 1981 Cutlass to the Wife was harmless error, where, as here, the record is insufficient to allow review of the award of maintenance, we remand both issues to the trial court for redetermination in accordance with the views expressed herein. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447; *In re Marriage of Petramale* (1981), 102 Ill. App. 3d 1049, 430 N.E.2d 569.) On remand, in order for the trial court to determine an equitable distribution of the marital property and the award of maintenance, the trial court should receive additional evidence to determine the current economic circumstances of the parties. See *In re Marriage of Fuggiti* (1985), 130 Ill. App. 3d 190, 474 N.E.2d 386.

Although not challenged on appeal, the trial court may also modify the award of other marital assets if the trial court finds such modifications necessary to provide for a just distribution of property. *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

In light of the need for a redetermination by the trial court of the issues of property distribution and maintenance, we are unable to review the Wife's allegations that the trial court abused its discretion when it denied her petition for attorney fees. (*In re Marriage of Cuisance* (1983), 115 Ill. App. 3d 551, 450 N.E.2d 1302.) Accordingly, the trial court is directed to reconsider the issue on remand.

■ The Wife also alleged the trial court was prejudiced against her. The Wife failed to include this issue in her post-trial motion, and the trial court did not consider it at the post-trial hearing. Accordingly, we deem this issue waived on appeal. 107 Ill. 2d R. 366(b)(2)(iii); *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.

The judgment of the circuit court of Kane County is reversed and the cause remanded for a new hearing.

Reversed and remanded.

INGLIS and WOODWARD, JJ., concur.

## APPENDIX

| Husband's Nonmarital Property | Value Awarded to Husband | Value Awarded to Wife |
|---|---|---|
| Aid Life Insurance Policies: | | |
| No. 0743020 | $ 3,067 | $ - 0 - |
| No. 1118001 | 2,310 | - 0 - |
| Hancock Life Ins. | 313 | - 0 - |
| Inheritance | 1,000 | - 0 - |
| Total | $ 6,690 | - 0 - |

| Wife's Nonmarital Property | | |
|---|---|---|
| Inheritance remaining | $ - 0 - | $ 38,640 |
| Total | $ - 0 - | $ 38,640 |

| Marital Property | | |
|---|---|---|
| 1. Marital residence ($97,500 value at time of judgment) | $ 38,775 | $ 58,775 |
| 2. Husband's Pension | 3,857 | |
| 3. Husband's IRA | 2,000 | |
| 4. T.E.C.U. Account (savings account) | 2,124 | 2,124 |
| 5. H.F.S.L. Account (savings account) | 811 | 811 |
| 6. ALCAN Shares (stock) | 480 | |
| 7. Northern F.S. (1 share) | Value Undetermined | |
| 8. 1982 Toyota Truck | X | |
| 9. 1981 Cutlass | | X |
| 10. Washing machine | 700 | |
| 11. Television set | 700 | |
| 12. Tractor engine block | 500 | |
| 13. Country Life Ins. Policy | 922 | |
| 14. Joint savings account funds (spent on European trip) | | 3,500 |
| 15. Two silver bars | - 0 - | 140 |
| Total (Marital Property) | $ 50,869 (44%) | $ 65,350 (56%) |
| Total (Marital and Nonmarital) | $ 57,559 | $ 103,990 |