*In re* MARRIAGE OF GLENNA RADAE, Petitioner-Appellee, and ALEX L. RADAE, Respondent-Appellant.

Fifth District   No. 5—90—0093

Opinion filed February 26, 1991.

Jay R. Tomerlin, of East Alton, for appellant.

Lewis E. Mallott, of Godfrey, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

The circuit court of Madison County ordered dissolved the marriage of Glenna Radae, petitioner, and Alex Radae, respondent. Respondent, Alex, appeals from that portion of the judgment which awarded the petitioner, Glenna: (1) custody of their child; (2) $20,915 as her interest in the marital estate's contributions made to reduce the mortgage on Alex's nonmarital home; (3) one-half of a tax return check; and (4) one-half of the proceeds from the sale of a horse. Respondent also appeals from that portion of the circuit court's judgment which ordered him to pay: (1) $350 to petitioner's parents for hay and groceries received during the marriage; (2) $3,170 of a $5,000 loan provided by petitioner's parents; and (3) petitioner's attorney fees. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### CUSTODY

■ In determining custody, the circuit court must assess what is in the "best interest" of the child, and in doing so, must consider all relevant factors. (*In re Marriage of Sorenson* (1984), 127 Ill. App. 3d 967, 469 N.E.2d 440; Ill. Rev. Stat. 1989, ch. 40, par. 602.) Having superior opportunity to observe witnesses and evaluate evidence, the circuit court is given broad discretion in making a custody determination. (*In re Custody of Krause* (1982), 111 Ill. App. 3d 604, 444 N.E.2d 644.) If, however, the circuit court's determination is against

the manifest weight of the evidence, then the appellate court has a duty to overturn the circuit court. *In re Marriage of Mangan* (1989), 182 Ill. App. 3d 140, 537 N.E.2d 960.

Although the circuit court's determination of custody in this case was not against the manifest weight of the evidence, we digress to make clear that the appellate court does not approve of the practice of assassinating the other parent's character as a means of achieving custody, a practice that was arguably used in this case.

■ Though a court must weigh all relevant factors when determining custody (*In re Marriage of Sorenson* (1984), 127 Ill. App. 3d 967, 469 N.E.2d 440; Ill. Rev. Stat. 1989, ch. 40, par. 602), it is not to consider conduct of the present or proposed custodian which does not affect the parent-child relationship. (*In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 420 N.E.2d 555.) The ability to be a parent and to act as a parent is what is at stake. Casting stones is not.

### DISTRIBUTION OF MARITAL PROPERTY

■ Respondent contends that the trial court's distribution of marital assets was error. Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503 *et seq.*) governs the classification and distribution of marital assets. Pursuant to section 503 of the Act, the circuit court must first classify each asset as either marital or nonmarital. (*In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 527 N.E.2d 18, citing *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) The circuit court must then determine whether either party has shown by clear and convincing evidence that the marital estate contributed to a nonmarital asset; if that showing has been made, the marital estate is entitled to reimbursement under section 503(c)(2) (Ill. Rev. Stat. 1989, ch. 40, par. 503(c)(2)). (See *In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 527 N.E.2d 18.) Once the court assigns each spouse his or her nonmarital property, it must then "divide the marital property *** in just proportions" considering all relevant factors as well as those factors enumerated in section 503(d) of the Act. Ill. Rev. Stat. 1989, ch. 40, par. 503(d); *In re Marriage of Ryman* (1988), 172 Ill. App. 3d 599, 527 N.E.2d 18; *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.

In this case, the circuit court determined that the marital estate's contributions made to reduce the mortgage on respondent's nonmarital home was $41,830, and credited the marital estate for this amount. (See Ill. Rev. Stat. 1989, ch. 40, par. 503(c)(2).) The circuit court divided this amount equally, awarding petitioner $20,915. The

circuit court reasoned that petitioner was entitled to such an amount, because the marriage lasted for a "substantial period of time" and petitioner contributed "her share of marital funds" on respondent's home, the benefit of which only respondent received. We disagree with this division.

The record supports the circuit court's finding that between the date of Alex and Glenna's marriage (November 17, 1984) and the date of their divorce (January 12, 1989), $41,830 was spent to reduce the mortgage. The record, however, fails to support much else.

■ Petitioner and respondent were married less than two years when petitioner filed for divorce. They became permanently separated only 2½ years after their marriage. This marriage cannot be characterized as lasting a "substantial length of time," especially in light of the fact that a divorce proceeding was pending for more than half the length of the marriage. In addition, the record does not support the circuit court's distribution because: (1) petitioner's income was dramatically lower than respondent's income; (2) there was a six-month period during the marriage when petitioner did not work at all; and (3) petitioner no longer contributed to the mortgage payments after she moved from the marital residence in July of 1987, yet the payments on the house made after she moved out were still credited to the marital estate for division. Awarding petitioner half of the mortgage payments in light of her minimal contribution, monetarily or otherwise, seems to us inherently unjust. Therefore, we remand to the circuit court for division of marital assets consistent with these findings.

## A. INCOME TAX RETURN AND HORSE PROCEEDS

■■■ The circuit court found that Alex dissipated the proceeds of both an income tax return and proceeds from the sale of a horse and, therefore, awarded half the amount of each to petitioner. Dissipation occurs when a spouse uses marital property for his own benefit for purposes unrelated to the marriage at a time when the marriage is in serious jeopardy or is undergoing irreconcilable breakdown. (*In re Marriage of Getautas* (1989), 189 Ill. App. 3d 148, 544 N.E.2d 1284.) A party charged with dissipation must show by clear and convincing evidence how the funds were spent. (*In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 507 N.E.2d 207.) Vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. (*In re Marriage of Getautas* (1989), 189 Ill. App. 3d 148, 544 N.E.2d 1284; *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 507 N.E.2d 207.) Respondent produced no evi-

dence showing how the funds were spent, so we affirm on this portion of the appeal.

### B. HAY, GROCERIES, AND $5,000—GIFT OR LOAN?

The circuit court ordered respondent to pay petitioner's parents $350 for hay and groceries and $3,170 of a $5,000 loan given to respondent and petitioner during their marriage. We affirm the circuit court with respect to the $5,000 loan, but reverse the circuit court on the issue of hay and groceries.

■■ ■ Donative intent is presumed when property is transferred from a parent to a child. (*In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777.) Petitioner did not overcome this presumption. Petitioner testified that her parents never requested reimbursement for the hay and groceries and never mentioned how much they cost. In fact, she testified that her parents were just "helping [them] out" with groceries and such. This testimony supports no other finding but that the hay and groceries were gifts. With respect to the $5,000 loan, however, petitioner testified that she, respondent, and her parents had an understanding that the money was to be paid back. This is sufficient to overcome the presumption of donative intent, as no evidence was presented to refute it.

### C. ATTORNEY FEES

■■ Whether an award of attorney fees is proper depends upon a showing of one's inability to pay coupled with the other spouse's ability to pay. (*In re Marriage of Wolf* (1989), 180 Ill. App. 3d 998, 536 N.E.2d 792.) If one party is unable to pay, then the other party can be ordered to pay. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) Respondent argues that petitioner neither showed an inability to pay her attorney fees nor respondent's ability to pay her fees. We disagree.

■■ Petitioner's job pays only $14,000 a year with no benefits. She estimates that it will cost $1,700 a month to care for herself and the child. Conversely, respondent earns $47,000 a year and in addition has his own business which had generated as much as $15,000 a year. Therefore, we find that it was not an abuse of discretion to order respondent to pay petitioner's attorney fees.

In light of the foregoing, the circuit court is reversed in part and affirmed in part.

Affirmed in part; reversed in part and remanded.

LEWIS and CHAPMAN, JJ., concur.