2023 IL App (2d) 230081-U
No. 2-23-0081
Order filed November 2, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| DENNIS McDOWELL, | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 11-DV-867 |
| | ) | |
| COLLEEN McDOWELL, | ) | Honorable |
| | ) | Justin M. Hansen, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: Based on all the statutory factors, the trial court did not err in denying former husband's motion to modify maintenance. Although husband's income had dropped significantly since the dissolution judgment, he could pay the maintenance award given his overall financial condition, including assets such as substantial investment accounts and a large inheritance.

¶ 2    Petitioner, Dennis McDowell, appeals from an order of the circuit court of McHenry County denying his motion to modify maintenance awarded to his former wife, respondent Colleen McDowell. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On March 12, 2013, the trial court entered a judgment dissolving the parties' marriage. The judgment ordered Dennis to pay Colleen permanent maintenance of $3000 monthly. The property awarded to Dennis included the marital residence and his dental practice. Both parties were awarded various financial and investment accounts. On February 14, 2022, Dennis filed a motion to modify maintenance, alleging, in substance, that when the judgment of dissolution was entered, his annual gross income was $120,000. Dennis claimed, *inter alia*, that there had been a substantial change in circumstances since the dissolution judgment, in that his income had dropped significantly through no fault of his own. Dennis asked the court to terminate or reduce the maintenance award.

¶ 5    On November 7, 2022, Dennis filed a financial affidavit indicating that, in 2021, his gross monthly income from all sources was $4252. He listed monthly payroll deductions of $1050, monthly living expenses of $5893 (including $2094 total in mortgage and home equity loan payments), and monthly payments of $353 for health insurance. Dennis listed credit card debt totaling $4836. He was paying $670 per month toward the credit card debt and $500 per month toward his son's student loan (which had a balance of $17,865). His assets included (1) bank accounts totaling $4615, (2) his dental practice with a fair market value of $150,000, (3) an individual retirement account (IRA) worth $8699 and a simplified employee pension IRA worth $386,024, (4) his home with a fair market value of $340,000 (subject to a combined mortgage and home equity loan balance of $70,813), and (5) vehicles and a trailer with a total fair market value of $33,500 (subject to a loan on one of the vehicles, with a balance of $7783).

¶ 6    Colleen filed a financial affidavit on December 8, 2022, showing a gross monthly income of $4154 (including Dennis's monthly maintenance payments of $3000). She listed monthly payroll deductions of $233 and monthly living expenses of $4794. According to the affidavit,

Colleen's debts (including credit card debt) totaled $10,696. She was paying $1844 per month toward her debts. Her assets included (1) a bank account with a balance of $4178, (2) IRAs worth a total of $108,089, (3) her home (the value of which she claimed was "[u]nknown"), and (4) a motor vehicle with a fair market value of $700.

¶ 7    At the time of the hearing on the motion, Dennis was 68 years old, and Colleen was 62. Dennis testified that he was self-employed as a dentist. He had practiced dentistry for 42 years. In the last four or five years, Dennis's income from his practice had substantially decreased, as patients he had treated since the early years of his practice were dying or were retiring and moving away. At the same time, due to his age, potential new patients were wary of choosing Dennis as their dentist, fearing that he might retire from his practice shortly.

¶ 8    In addition, his rent and other business expenses were increasing. Dennis confirmed that his financial affidavit accurately reflected his monthly income. On cross-examination, Dennis testified that his mother passed away earlier that year. She had accounts with Athene and with JPMorgan Chase. Dennis estimated the balances of those accounts to be $160,000 and $260,000, respectively. Her accounts with other financial services firms had balances totaling over $695,000. Dennis and his sister each stood to inherit half of their mother's assets and were completing the paperwork necessary to transfer the assets to them.

¶ 9    Colleen testified that she was not employed when the marriage was dissolved. However, she was now employed as an in-home caregiver, earning either $16 or $17 hourly, depending on the needs of a particular client. She worked more than 16 hours per week on average. She enjoyed the work and found it rewarding. Colleen received an inheritance from her father's estate. In April 2020, she received a distribution of about $185,000, part of which she used to purchase her home. She also received about $30,000 from selling her father's condominium.

¶ 10    Colleen testified that she had completed a few years of college but did not earn a degree. Her computer skills were not up to date, and she had no experience in accounting. She had considered becoming a certified nursing assistant, but because the pay differential would be nominal, she chose not to pursue that credential. Colleen identified a property tax bill indicating that the fair market value of her home was approximately $155,000.

¶ 11    In denying Dennis's motion, the trial court acknowledged that Colleen was now employed and that Dennis, while still employed, suffered a significant drop in income. The court observed that Colleen preferred to continue with her present position, which she found satisfying, rather than find additional work or obtain credentials that would enable her to become self-supporting. The court noted that the parties were nearing retirement age and that the maintenance payments were taxable to Colleen and deductible from Dennis's income. The court further noted that the judgment of dissolution awarded investment accounts worth $263,000 to the parties, that Dennis was awarded the marital residence and his dental practice, and that the overall division of property slightly favored Colleen. The court observed that Colleen's income had increased since the judgment of dissolution, whereas Dennis's income had fallen. The court found that, after the judgment of dissolution, Colleen had received an inheritance of $215,000 (some of which she used to purchase a home), and Dennis was in the process of receiving an inheritance of $570,000 to $600,000.

¶ 12    The trial court further found that Colleen owned investment accounts with a total value of $183,000[1] and that Dennis's financial affidavit indicated that he had retirement accounts totaling

---

[1]Colleen was awarded these investment accounts in the dissolution judgment but did not list them in the financial affidavit she produced for the modification proceeding. The trial court

about $394,000. The court indicated that it considered the needs of the parties. Although $3000 per month was a significant portion of Dennis's income, the court had to consider Dennis's "overall financial position, *** in deciding whether or not he's established a substantial change [in circumstances] and whether or not he's still able to meet his financial obligations, in particular maintenance." The court concluded that, in light of the relevant factors, Dennis had not met his burden of proof and that "[t]he evidence shows that [Dennis] has the financial resources to meet his existing maintenance obligation without unduly compromising his ability to meet his own needs."

¶ 13    Dennis filed this timely appeal.

¶ 14                                    II. ANALYSIS

¶ 15    Dennis argues that the trial court erred in denying his motion to modify maintenance. To address this claim, we first recite the statutory factors that govern motions to modify maintenance.

¶ 16    Section 510(a-5) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a-5) (West 2020)) provides, in pertinent part:

>    "(a) An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances. *** In all *** proceedings [for the termination or modification of maintenance], *** the court shall consider the applicable factors set forth in subsection (a) of Section 504 and the following factors:

>        (1) any change in the employment status of either party and whether the change has been made in good faith;

---

commented that Colleen apparently "just remembered or realized that she had those [accounts]."

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable."

¶ 17    Section 504(a) of the Act (*id.* § 504(a)) provides, in pertinent part:

"(a) In a proceeding for dissolution of marriage [or] a proceeding for modification of a previous order for maintenance under Section 510 of this Act, *** the court may grant a maintenance award for either spouse in amounts and for periods of time as the court deems just, *** and the maintenance may be paid from the income or property of the other

spouse. The court shall first make a finding as to whether a maintenance award is appropriate, after consideration of all relevant factors, including:

(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable."

¶ 18 It is well established that "[t]he decision to modify or terminate maintenance is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *In re Marriage of Heasley*, 2014 IL App (2d) 130937, ¶ 31. "An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court." *In re Marriage of Bothe*, 309 Ill. App. 3d 352, 356 (1999).

¶ 19 Dennis, focusing on just his and Colleen's respective monthly employment incomes of $4252 and $1154, notes that his maintenance payments leave Colleen with $4154 while reducing his employment income to $1252. Without citation of authority, Dennis argues that "having to pay roughly 70% of one's gross income to a former spouse who remains clearly underemployed as maintenance is patently absurd and unjust." However, we agree with the trial court that it is appropriate to consider the financial condition of the parties as a whole, not just their incomes from employment. The Act clearly calls for consideration of both property awarded to the parties in the

dissolution judgment and property acquired thereafter. See 750 ILCS 5/510(a-5)(6), (8) (West 2020).

¶ 20    According to Dennis, the trial court erred by considering his $270,000 in equity in the former marital residence, his $394,000 in retirement accounts, and his expected inheritance of $570,000 to $600,000 as a basis for continuing maintenance at the amount set in the original judgment. Dennis notes that the equity in the marital property and the retirement accounts were awarded to him as part of his share of the marital estate, and he argues that "[t]o now use these same assets as a basis to keep maintenance at the same amount essentially redistributes the marital estate." The argument is meritless.

¶ 21    First, Dennis points to no evidence that continuing to pay $3000 monthly in maintenance will force him to use the equity in the former marital residence. Dennis has $394,000 in retirement accounts and is expected to inherit $570,000 or more from his deceased mother. Given his substantial financial assets, he will have opportunities to earn investment income to satisfy his maintenance obligation. Indeed, at oral argument, Dennis's attorney indicated that Dennis planned to live off the income from investments. Dennis nonetheless argues that there is no evidence of what income he will receive from his inheritance. However, a court "may take judicial notice of the fair earning powers of money or invested capital over a certain time period." *In re Marriage of Ryman*, 172 Ill. App. 3d 599, 612 (1988). Defendant has not shown that continuing to pay $3000 monthly in maintenance would force him to invade the principal of any of his investments, let alone use the equity in his home.

¶ 22    Second, while Dennis insists that he should not have to use property awarded to him in the judgment of dissolution to pay maintenance, he provides no authority or meaningful argument in support of this contention. Accordingly, the issue is forfeited. See *Abbinanti v. Presence Central*

*& Suburban Hospitals Network*, 2021 IL App (2d) 210763, ¶ 17. Forfeiture aside, Dennis's position is simply meritless. See *In re Marriage of Bryant*, 206 Ill. App. 3d 167, 168, 171-72 (1990) (in addressing former husband's petition to terminate maintenance, the trial court properly determined husband's ability to pay by considering, *inter alia*, his income from the stock and pension he was awarded in the dissolution judgment).

¶ 23    Dennis also relies on *In re Marriage of Osseck*, 2021 IL App (2d) 200268, as authority that it was error to deny his motion. In *Osseck*, the parties, Steven and Toni Osseck, entered into a marital settlement agreement that awarded Toni $18,500 monthly in maintenance. *Id.* ¶¶ 4, 6. Steven was then earning an annual income of over $800,000. *Id.* ¶ 6. He subsequently filed a petition to modify maintenance. *Id.* ¶ 7. At the hearing on the petition, he testified that, under his employer's new compensation structure, he anticipated earning only a little more than half of what he was earning at the time of the marital settlement agreement. *Id.* ¶¶ 12-17. The trial court reduced the amount of maintenance in proportion to the reduction in Steven's income. *Id.* ¶ 29. Toni appealed, arguing, *inter alia*, that Steven failed to show a substantial change in circumstances. *Id.* ¶ 37. In particular, she argued that, notwithstanding the decrease in income, Steven could still pay maintenance in the amount awarded in the marital settlement agreement. *Id.* ¶ 58. Toni relied on *In re Marriage of Bernay*, 2017 IL App (2d) 160583, as authority that not every decrease in income constitutes a substantial change in circumstances. *Id.* We rejected Toni's argument:

> "In *Bernay*, the husband's employment income decreased from $225,000 to $145,000. However, the appellate court determined that there had been no change in the husband's ability to satisfy his $3600 monthly maintenance payments. [Citation.] In addition to his salary, the husband had a real estate portfolio worth $1.1 million, had $1.4 million in

retirement accounts, and expected to inherit approximately $1.9 million from the estates of his recently deceased parents. [Citation.] The wife, in contrast, earned $27,000 annually as a nurse, and her investments were considerably less. [Citation.] At the time of the prior modification order, the husband's investment accounts generated $40,000 in annual growth, whereas the wife's investment accounts did not even total $40,000. [Citation.]

This case is not like *Bernay*. In addition to $145,000 in employment income, the husband in *Bernay* had nearly $4.5 million in assets. With these resources, he could easily satisfy his $3600 monthly support obligation. Steven cannot similarly rely on his assets to satisfy his support obligation. Steven's assets, at just under $1 million, are far less, and his support obligation, at $18,500 per month, is far greater." *Osseck*, 2021 IL App (2d) 200268, ¶¶ 58-59.

¶ 24 Dennis argues that his assets are in the same range as Steven's in *Osseck*, whereas Steven's income was about ten times as much as his. We note, however, that Steven's maintenance obligation was more than six times as much as Dennis's, and, as discussed above, we do not believe Dennis has shown that his assets are insufficient to satisfy the maintenance award. In any event, *Osseck* is inapposite because we merely held that the trial court did not abuse its discretion in finding a substantial change in circumstances. *Id.* ¶ 60. It does not follow that we would have found an abuse of discretion if the trial court had ruled in Toni's favor.

¶ 25 Dennis argues that "the Trial Court's decision was based on ability to pay trumping all other factors and issues." According to Dennis, all of the trial court's findings on the statutory factors outlined in sections 510(a-5) and 504(a) of the Act "overwhelmingly support[ ]" terminating or modifying maintenance. Having thoroughly reviewed the trial court's findings, we disagree.

¶ 26    In its oral ruling, the trial court commented on the factors outlined in sections 510(a-5)(1) (750 ILCS 5/510(a-5)(1) (West 2020)) ("any change in the employment status of either party and whether the change has been made in good faith[ ]") and 510(a-5)(7) (*id.* § 510(a-5)(7)) ("the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought[ ]").  The court's findings on these factors were essentially the same: Dennis's income had dropped significantly, while Colleen had obtained employment and thereby increased her income.  Those findings favor Dennis.

¶ 27    The trial court's finding concerning section 510(a-5)(2) (*id.* § 510(a-5)(2)) ("the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate") also favors Dennis: the court found that Colleen had the potential to earn more but found her current employment satisfying and chose not to pursue more lucrative opportunities.  (We note that the court's findings relative to section 504(a)(3) (*id.* § 504(a)(3)) ("the realistic present and future earning capacity of each party") were duplicative of its findings relative to sections 510(a-5)(1), 510(a-5)(2), and 510(a-5)(7).)

¶ 28    Section 510(a-5)(3) (*id.* § 510(a-5)(3)) requires the court to consider "any impairment of the present and future earning capacity of either party."  The trial court noted that both parties were nearing retirement age and that Colleen testified she had medical issues that she lacked the funds to address.  This factor is neutral or slightly favors continuing maintenance.

¶ 29    Concerning the factor outlined in section 510(a-5)(4) (*id.* § 510(a-5)(4)) ("the tax consequences of the maintenance payments upon the respective economic circumstances of the parties"), the trial court noted that the maintenance payments were deductible from Dennis's income taxes.  That finding supports continuing maintenance.

¶ 30    Section 510(a-5)(6) (*id.* § 510(a-5)(6)) requires the trial court to consider "the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage *** and the present status of the property." Although the court found that the property division under the judgment of dissolution was "*slightly* in Colleen's favor" (emphasis added), this factor is essentially neutral.

¶ 31    Section 510(a-5)(8) (*id.* § 510(a-5)(8)) requires consideration of "the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, ***." The trial court noted that Colleen received an inheritance of about $215,000, of which she used $155,000 to purchase a home. Dennis was in the process of receiving an inheritance from his mother. Although the inheritance was not property that Dennis currently owned, the court deemed it equitable under section 510(a-5)(9) (*id.* § 510(a-5)(9)) to consider the inheritance because there seemed to be little doubt that it would be available to Dennis in the future. Dennis's projected inheritance was considerably greater than Colleen's, so this factor favors continuing maintenance.

¶ 32    Concerning section 504(a) (*id.* § 504(a)) the trial court considered the needs of each party (*id.* § 504(a)(2)). The court observed: "[Dennis's] position is that he can essentially no longer afford maintenance under the current order because of his decreased income. [Colleen's] position is that she cannot live without it." The court found, however, that it had to look at Dennis's overall financial position, not just his decrease in income. The court also noted that Dennis had not made sacrifices to his lifestyle but "still liv[ed] in the same house, *** still own[ed] two cars, [and] [ran] his dental practice largely the same way."

¶ 33    Contrary to Dennis's argument, the statutory factors do not overwhelmingly support terminating or reducing maintenance. Given these factors, we cannot say that the denial of Dennis's motion was an abuse of discretion.

¶ 34                                    III. CONCLUSION

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 36    Affirmed.