*In re* MARRIAGE OF MARYANNE MANGAN, Petitioner-Appellant, and GEORGE MANGAN, Respondent-Appellee.

First District (1st Division) No. 1—88—0560

Opinion filed April 10, 1989.

---

*Justice Quinlan participated in this opinion prior to his assignment to the sixth division.

Kanter & Mattenson, Ltd., of Chicago (Stuart Gordon and William J. Arendt, of counsel), for appellant.

Massucci, Blomquist, Brown & Judson, of Arlington Heights (Raymond R. Massucci and Terry J. Finman, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from an order granting custody of the parties' minor son, George, Jr., to his father, George Mangan, Sr. We affirm.

Petitioner Maryanne Mangan (Maryanne) filed a petition for dissolution of marriage on September 25, 1984. Maryanne was granted temporary custody of the minor child, George Jr., pursuant to an agreed order on November 26, 1984. On January 29, 1987, George Mangan (George) filed a counterpetition for dissolution at which time he asked to be awarded custody of George Jr.

At the time of trial on the custody issue, George Jr. was 5½ years old and had lived with his mother since birth. Although there was testimony establishing that George Jr. was doing well in a kindergarten program in his Lincoln Park neighborhood and was healthy and well cared for, there was substantial testimony indicating that he suffered from neurotic emotional illness. Testimony introduced by the mother focused on the fact that George Jr. had been diagnosed as

having moderate asthma, is chronically ill and should not be separated from his mother because separation could cause anxiety attacks that in turn could cause critical asthma attacks. Dr. Bussell, the psychiatrist appointed by the court from a list tendered by Maryanne, testified that the child suffered from a neurotic disorder and has a great deal of pent-up anger and rage which he characterized as abnormal.

Testimony regarding the severity of George Jr.'s asthma was substantially conflicting. Maryanne testified that the child had to be hospitalized twice during the time she was caring for him. She conceded, however, that only one incident involved an asthma attack. In addition, although Maryanne took George Jr. to the hospital emergency room 20 to 30 times, George testified that he had never needed to do so during all the time he had his son for visitation. Testimony also showed that George Jr. never exhibited symptoms of asthma while in the presence of his own psychiatrist (Dr. Ner Littner), Maryanne's neighbor, Dr. Bussell, Maryanne's sister or George's family and friends.

There was also varying testimony with regard to the cause of George Jr.'s asthma. Dr. Littner, George Jr.'s psychiatrist, who was selected by Maryanne and testified on her behalf, stated that the asthma was triggered by emotional causes. Another of the child's doctors, Dr. Randall, testified that environmental factors were the primary cause and that the severity would depend upon the time of year. Dr. Randall also testified that George Jr. could lead a relatively normal life so long as he received medication on a timely basis. Dr. Randall expressed the opinion that any reliable caretaker could learn how to manage the boy's illness and to give the appropriate injections and medications.

There was also testimony from both parents regarding the child's medication. George testified that Maryanne constantly changed the medications as well as their frequency and dosages. He also testified that the written instructions she gave him were often inconsistent with instructions from George Jr.'s physicians which necessitated contact with the doctors to verify the correct dosages of medication.

Maryanne alleged that George was an alcoholic and an unfit father as a consequence. No medical evidence or expert·testimony, however, was presented in this regard. Of the two incidents involving George being stopped for allegedly driving under the influence of alcohol, one occurred prior to the marriage when he was 19 years old and the other involved a ticket he received for improper lane usage six years prior to the trial. George testified that he did not drink on weekends when he had visitation with his son. He also testified that

he has never been convicted of driving under the influence or had his license suspended or revoked. Testimony regarding George's drinking habits was also presented by George's friend, Thomas Scanlon. Scanlon's testimony indicated that George drank beer after softball games but that there were only 10 games each summer and George did not drink after every game. Two other witnesses testifying on George's behalf testified that they had an occasional drink with George after work. Based on the testimony regarding George's prior drinking habits, the trial court found him to be an alcoholic but also found that he had rehabilitated himself and that alcohol had not interfered with his parenting skills or the time spent with his child.

A substantial amount of testimony was presented regarding George's capabilities as a parent, including that of Thomas and Sally Scanlon, George's sister, Maryanne's father and Dr. Bussell, all of whom testified that George was a good parent who was very attentive to his son's medical needs. Dr. Bussell, who as previously stated was chosen to assess the parties under the direction of the court, testified that George would be the better custodial parent.

Testimony on Maryanne's behalf was presented by Dr. Littner and Dr. Arnold, Maryanne's psychiatrist of three years, both of whom testified that Maryanne was handling George Jr. appropriately. Dr. Littner testified that although Maryanne did "overshelter" George Jr., oversheltering an asthmatic child was typical. He also testified, however, that he had never seen Maryanne as a patient, had never given her psychological tests and had seen her only once with the child. On cross-examination, Dr. Arnold stated that he had only observed Maryanne and George Jr. during 15-minute breaks between therapy sessions with Maryanne in his office and that he was unable to render an opinion as to who would be a better parent. Maryanne presented additional supportive testimony from an acquaintance who had observed her interaction with the child at a local park and a teacher from his school, who stated that his behavior was appropriate to his age.

Following the presentation of all of the evidence, the trial court found that it was in the best interest of the child that custody be granted to the father. Maryanne Mangan now brings this appeal.

Maryanne's claim is that the trial court's decision to award custody of the minor child to the father was against the manifest weight of the evidence. She states that Dr. Bussell's testimony was that the child's pent-up anger was "reported to him" by the mother not, as the trial court stated, that the boy "had anger and confusion" due to his interaction with his mother. Further, she contends that the trial

court abused its discretion by relying on Dr. Bussell's report, which she characterizes as inaccurate and incomplete. She contends that although he claimed she exhibited symptoms of "histrionic personality disorder," he later admitted that she did not have such a disorder. She argues that Dr. Bussell's opinion that she was infantizing and smothering the child was inaccurate and that it was based on the fact that he did not understand the severity of George Jr.'s asthma. Maryanne also challenges Dr. Bussell's assertion that her overmothering was manifested in George Jr. missing 90% of his scheduled school days due to being ill. She contends that this was erroneous and that evidence adduced at trial showed that he missed only 8 of 58 possible school days. Maryanne maintains that while evidence shows that she was a careful parent, Dr. Bussell failed to investigate evidence that George was an alcoholic. She focuses on the fact that she has been George Jr.'s primary caretaker since his birth, that she keeps in constant contact with the boy's teachers and doctors, and that she is available to care for him 24 hours per day, and that as a result, she would be the better custodial parent.

■ The Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 602) provides that custody determinations are to be made based on the best interest of the child. Section 602 provides that the following factors shall be considered:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child." Ill. Rev. Stat. 1987, ch. 40, par. 602.

■ It is the task of the trial court to evaluate all of the circumstances and appraise the witnesses' credibility. It is not necessary to find one parent "unfit" to justify an award to the other parent. Nor do Illinois courts assume that the mother is necessarily the better cus-

todian for young children. (See *In re Marriage of Sieck* (1979), 78 Ill. App. 3d 204, 396 N.E.2d 1214.) A reviewing court should not overturn the trial court's determination unless the judgment is against the manifest weight of the evidence or is manifestly unjust. *In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.

In the pending case, the trial court heard substantial testimony from the parties and their witnesses prior to determining that custody of the minor should be given to the father, George Mangan. After reviewing the record, we find no basis upon which to find that the trial court abused its discretion in granting custody of George Mangan, Jr., to his father.

Contrary to Maryanne's assertion, the trial court's decision was not based solely on Dr. Bussell's testimony that George Jr. had anger and rage due to her parenting. The trial court in written findings discussed Maryanne's allegations regarding George's alcoholism and found that George had rehabilitated himself and that his use of alcohol had no detrimental impact on his parenting skills. Furthermore, there was no evidence to support Maryanne's claim that Dr. Bussell's report was inaccurate. Although there was a difference of opinion expressed by the experts as to who would be the better custodial parent, and although Dr. Bussell acknowledged using archaic terminology in describing Maryanne's personality, the trial court's opinion was not based upon any finding of neurotic disorder on Maryanne's part. Rather it was based upon the court's conclusion that George would be better able to serve George Jr.'s interests.

There is also no merit to Maryanne's contention that Dr. Bussell's testimony and written report were impeached with respect to his finding that Maryanne tended to overexaggerate the seriousness of the child's asthma. The trial court heard several witnesses who had spent significant periods of time with the child and never saw him experience any symptoms of asthma. No medical testimony was presented indicating that the child's asthma was so serious that George could not manage it. To the contrary, substantial evidence was presented showing that George could do so and had demonstrated his ability to do so. The trial court was also presented with considerable testimony to the effect that Maryanne tended to overreact by rushing the child to the emergency room, called George constantly on weekends to check up on George Jr., claimed he was ill when he was not and possibly overmedicated him. Although Maryanne criticized Dr. Bussell's testimony that her "overmothering" was reflected in the fact that George Jr. missed 90% of his scheduled school days, and states that he missed much less, according to the record, the information about

the child's having missed school 90% of the time was information that Maryanne had given Dr. Bussell in his interviews with her.

There is also no merit to Maryanne's claim that the bulk of the evidence established that she was a careful parent and that George was not. Although Maryanne placed great emphasis on George's alleged drinking problem, she produced no witnesses to corroborate her testimony. Maryanne herself testified that she could not say that he had ever been impaired by alcohol when he picked up George Jr. Moreover, even George's witnesses who testified that they drank with him on social occasions testified that they had never seen him intoxicated and that he never drank when he had visitation with his son.

On the basis of the testimony of George's own witnesses, as well as a DUI incident when he was approximately 18 to 19 years old and an incident six years prior to trial for which he was ticketed for improper lane usage, the trial court determined that George was an alcoholic. As noted previously, however, the trial court found that he had rehabilitated himself, that he functioned well and that alcohol had no adverse impact on his life or on his parenting skills. Section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 602) specifically requires that "[t]he court shall not consider conduct of a *** proposed custodian that does not affect his relationship to the child." See also *In re Custody of Blonsky* (1980), 84 Ill. App. 3d 810, 405 N.E.2d 1112.

Maryanne's contention that George lacked concern for his son's health problems is also not demonstrated by the record. George presented testimony by six witnesses, among them Maryanne's father, all of whom were of the opinion that George was an attentive and careful parent and that he would be the better custodial parent. There was testimony showing that George purchased special medical equipment necessary to cope with the child's asthma and that he had been trained in its use. George testified that he had contacted various of George Jr.'s doctors regarding the proper dosage of the medications that the child required on a daily basis. In short, no witness other than Maryanne herself raised questions as to George's parental fitness. In contrast, several witnesses testified regarding unstable behavior on Maryanne's part.

In urging reversal, Maryanne also relies on Dr. Littner's testimony that she was the primary caretaker and the psychological parent and therefore she should remain the custodial parent. She points to Dr. Littner's testimony that the usual trigger for an asthma attack in a young child is the fear of being abandoned by his mother and that separation could bring on a condition known as status asthmati-

cus, which is untreatable and can cause death. On this basis, Dr. Littner testified that custody should not be transferred away from Maryanne.

The record demonstrates that there was substantial disagreement as to the effect of separating George Jr. from Maryanne. Moreover, the issue before the trial court here was which parent would be the better custodial parent, and although Dr. Littner was the child's psychologist, he conceded that he had never interviewed George nor had he conducted any psychological tests on either Maryanne or George. Even assuming he had some basis for believing Maryanne to be the preferable custodial parent, his opinion was only one factor to be considered by the trial court and would not be determinative in as much as he had no basis for assessing George's parental abilities or the quality of his relationship with his son.

 In cases involving custody, it is the trial court's responsibility to evaluate the circumstances before it and assess the witnesses' credibility. As a reviewing court we will not overturn the trial court's determination unless the judgment is against the manifest weight of the evidence. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 609, 434 N.E.2d 811.) The trial court here heard substantial testimony regarding George's fitness as a custodial parent. While the court may also have found that Maryanne was a fit mother, after evaluating all of the evidence and considering the witnesses' credibility, the trial court determined that George would be the better custodial parent of the two. On the basis of the record before us, we find no reason to disturb the trial court's ruling.

Accordingly, the order of the circuit court of Cook County granting custody of George Mangan, Jr., to George Mangan is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.